**NORTH STAR MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Lorren Judson HOLTY, Genevieve Holty, Dennis Holty, David R. Junko, Individually, Mary Junko, Individually, and David R. Junko, as Father and Next Friend of Karen Junko and Lori Junko, Appellees.**

No. 86–424.

Supreme Court of Iowa.

March 18, 1987.

Dennis G. Larson of Larson Law Office, Decorah, for appellees Holtys.

Richard R. Phillips and David L. Strand of Phillips Law Office, Decorah, for appellees Junkos.

Donald H. Gloe of Miller, Pearson, Gloe, Burns, Beatty & Cowie, P.C., Decorah, for appellant.

Considered by HARRIS, P.J., and McGIVERIN, WOLLE, LAVORATO, and NEUMAN, JJ.

LAVORATO, Justice.

The issue in this case is whether a highway accident involving a farmer's truck is covered by his farm liability insurance, which excludes coverage for bodily injury arising out of the use of any motor vehicle. We hold that the truck is a motor vehicle excluded from coverage; we vacate the decision of the court of appeals and reverse the judgment of the district court.

On the afternoon of May 14, 1984, Lorren Judson Holty was driving his 1951 half-ton truck southbound on an Iowa blacktop road. David R. Junko and his companion were approaching from the south on their motorcycles. As the truck rounded a curve, the auger attached to the truck's left side came loose at one end and extended across the center line of the road. Junko was injured when he and his companion swerved to avoid being hit by the auger.

Holty was driving the truck from his farm in Minnesota to a farm he rented in Iowa. He intended to pick up fertilizer there, proceed to the rented field, and unload the fertilizer into his planter.

In 1967 Holty had removed the stock rack from the truck chassis and replaced it with a gravity box for hauling fertilizer and shelled corn. An auger was permanently affixed to the gravity box to aid in unloading its contents. The truck had been used to haul corn into town in the past, but in recent years its use was restricted to moving corn and fertilizer around and between Holty's farms.

Holty licensed the truck and purchased automobile liability insurance for it through 1982. In 1983 he did not farm the Iowa rental land and the motor vehicle registration and insurance on the truck lapsed. At the time of the accident the truck was neither registered as a motor vehicle nor insured under an automobile liability policy.

Junko, his wife Mary Junko, and their two children, Karen and Lori Junko (Junkos) filed suit against Holty seeking damages as a result of the accident. The Junkos alleged, in part, that Holty was negligent in failing to keep a proper lookout, failing to have his vehicle under control, failing to yield half the traveled road, and failing to keep his vehicle free from protrusion in disregard for the safety of others.

Holty made a demand on North Star Mutual Insurance Company to defend the suit under his farm liability policy. North Star filed this action for declaratory judgment against the insureds, Lorren Judson Holty, Genevieve Holty and Dennis Holty (Holtys), and the Junkos requesting the court to construe the policy to exclude coverage and to find that North Star had no duty to defend. The Holtys' policy with North Star contains the following language:

COVERAGE L—PERSONAL LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence....

Exclusions

This coverage does not apply:

....

(c) To bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:

....

(2) any motor vehicle owned or operated by ... any insured....

At section VIII, Additional Definitions, the policy defines "motor vehicle" as

a land motor vehicle, trailer, or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto) but does not include, except while being towed by or carried on a motor vehicle, any of the following: utility, boat, camp or home trailer, recreational motor vehicle, crawler or farm type tractor, farm implement or, if not subject to motor vehicle registration, any equipment which is designed for use principally off public roads.

The policy's description of the farm premises included both the Minnesota land and the rented farm in Iowa.

The district court, adopting the reasoning of a factually similar Minnesota Court of Appeals case, denied the request for declaratory judgment and found coverage and a duty to defend. *See North Star Mutual Insurance Co. v. Johnson*, 352 N.W.2d 791 (Minn.Ct.App.1984) (both farm and auto policies covered accident where chemical sprayer temporarily bolted to licensed and insured pickup extended and · smashed windshield of oncoming car). The district court found that the definition of "motor vehicle" was ambiguous but made no explicit finding whether the truck was either a motor vehicle or a farm implement. Instead, the court found that the accident was caused by the auger and was not "vehicle-related." The court of appeals affirmed the district court's findings and rulings.

On appeal, North Star asserts that the district court erred (1) in holding that the policy definition of "motor vehicle" was ambiguous, and (2) in failing to hold that the truck was a motor vehicle and thus excluded from coverage.

 The construction and interpretation of the motor vehicle exclusion in this case are matters of law to be resolved by the court when, as here, neither party offers extrinsic evidence about the meaning of the relevant contract language. *Farm Bureau Mutual Insurance Co. v. Sandbulte*, 302 N.W.2d 104, 107–08 (Iowa 1981). The district court's interpretation is not binding on appeal. *Id.* at 108.

 "The rules of construction of insurance policies are well established. The insurance policy ... must be construed as a whole. The words used must be given their ordinary, not technical, meaning to achieve a practical and fair interpretation." *Aetna Casualty & Surety Co. v. Jewett Lumber Co.*, 209 N.W.2d 48, 49 (Iowa 1973) (quoting *Central Bearings Co. v. Wolverine Insurance Co.*, 179 N.W.2d 443, 445 (Iowa 1970)). Where the meaning of terms in an insurance policy is susceptible to two interpretations, the one favoring the insured is adopted. *Sandbulte*, 302 N.W.2d at 108. However, the mere fact that parties disagree on the meaning of terms does not establish ambiguity. *Id.* The test is an objective one: Is the language fairly susceptible to two interpretations? *Id.*

I. The farm liability policy issued to the Holtys clearly excludes coverage for injury arising out of the maintenance or use of any motor vehicle (including any machinery or apparatus attached thereto) owned or operated by the insured. The district court, following the reasoning of *North Star Mutual Insurance Co. v. Johnson*, 352 N.W.2d 791 (Minn.Ct.App.1984), found that "the alleged negligent act involved in this case was not vehicle-related." The court did not find any vehicle-related act of negligence to have been involved. We infer from this language that the court found coverage under the policy because the accident did not arise out of the maintenance or use of Holty's truck, the same issue involved in *Johnson*. *See id.* at 793.

In *Johnson*, it was alleged that the insured was negligent both in driving and in failing to secure a chemical sprayer arm bolted to his truck. The Minnesota Court of Appeals held that the farmer's alleged negligence in failing to secure the sprayer arm was an independent act, not related to the operation or use of the vehicle. Thus, both the farm policy and automobile policy provided coverage for the accident.[1] We

1. *Johnson* involved an issue of concurrent or multiple insurance coverage under an automobile policy and a farm policy. The term "multiple coverage" refers to the situation· where two or more policies are construed to cover two or more independent negligent acts which have concurred to cause a single injury. Marchiano, State Farm Mutual Automobile Insurance Company v. Partridge: *Expanding the Scope of Insurance Liability in California*, 7 Pac. L.J. 57, 58 n. 2 (1976). Hence, under multiple coverage, each insurer is obligated to indemnify the insured for the injury proximately caused by one of these distinct acts of negligence. *Id.* Unlike the Minnesota courts, we have not addressed the question whether the negligent driver of a motor vehicle owned by him is entitled to multiple coverage under a homeowner's or farm poli-

disagree in two respects with the analysis from *Johnson* adopted by the district court.

■ First, we believe the Minnesota Court of Appeals found an ambiguity in the definition of motor vehicle where none existed. *See Johnson*, 352 N.W.2d at 793. Like the exclusion in the Holtys' policy, the farm liability policy in *Johnson* included in its definition of motor vehicle "any machinery or apparatus attached thereto." *Id.* The *Johnson* court found that this language was not intended to "exclude coverage for negligent maintenance of farm equipment solely because the equipment is attached to a motor vehicle." *Id.* at 794. When words are not defined in the policy, we give them their ordinary meaning. *IMT Insurance Co. v. Amundsen*, 376 N.W.2d 105, 107 (Iowa 1985). A dictionary definition of apparatus is "a collection or set of materials, instruments, appliances, or machinery designed for a particular use ... any compound instrument or appliance designed for a specific mechanical ... action or operation." Webster's Third New International Dictionary 102 (1976). Attach means "to fasten (itself) firmly ... make fast or join." *Id.* at 140. We believe the auger is an apparatus attached to the truck. Therefore, the auger is included in the policy's definition of a motor vehicle.

■ Appleman, in his treatise, indicates that the term maintenance would seem to include acts of either commission or omission relative to the external or mechanical condition of a vehicle. 6B Appleman, *Insurance Law and Practice* § 4315, at 339 (1979). The Junkos' allegations regarding Holty's failure to keep his vehicle free from protrusion are directly related to the maintenance of the truck. If Holty's fail-ure to secure the auger caused the accident, then the accident arose out of negligent maintenance of the external condition of the truck. *Cf. Indiana Insurance Co. v. Winston*, 377 So.2d 718, 720 (Fla.Ct.App. 1979) (hood of car had been removed for body work; hood hinge sprung open striking injured person in eye as he was leaning on vehicle; held that injury arose out of maintenance of vehicle and fell within exclusion of homeowner's policy).

■ Second, we believe the accident cannot be properly characterized as nonvehicle-related and caused solely by the auger. Holty's truck, box and auger constitute one motorized vehicle. The gravity box and auger had been permanently affixed to the truck since 1967. Furthermore, the policy's definition of a motor vehicle includes any machinery or apparatus attached thereto. If Holty is liable it is not for a general failure to adequately tie down the auger; that act could not render him liable without his use of the vehicle on a public road. Moreover, the movement of the auger depended on the truck's movement and velocity to become a hazard. The policy insures against injury "caused by an occurrence." In this case, the occurrence was a highway accident involving a truck and a motorcycle. We believe the accident was vehicle-related and arose out of Holty's use of the truck. *Cf. Allstate Insurance Co. v. Jones*, 139 Cal.App.3d 271, 279, 188 Cal. Rptr. 557, 562 (1983) (negligent loading, securing, fastening and inspection of steel rods carried on pickup was vehicle-related and excluded under general liability policy in case where insured's truck collided with automobile and, as result of impact and improper storage, rods were ejected from

---

cy in addition to an automobile policy where the accident occurs off the insured's premises and where "two independent acts of negligence, one vehicle-related and one not vehicle-related, are involved." *See Waseca Mutual Insurance Co. v. Noska*, 331 N.W.2d 917, 921 (Minn.1983); *Progressive Casualty Insurance Co. v. Hoekman*, 359 N.W.2d 685, 687 (Minn.Ct.App.1984); *Johnson*, 352 N.W.2d 791, 793 (Minn.Ct.App. 1984); *see also State Farm Mutual Automobile Insurance Co. v. Partridge*, 10 Cal.3d 94, 102–03,

514 P.2d 123, 129, 109 Cal.Rptr. 811, 817 (1973) (passenger shot; court held both auto and homeowner's policies apply where negligence in modifying pistol to possess "hair trigger" action was nonauto-related cause and negligence in driving on rough terrain while hunting rabbits from vehicle was auto-related cause). The case before us involves only one policy because Holty's automobile policy on the truck had not been renewed.

truck and struck automobile driver in skull). Junko's injury clearly arose out of the maintenance and use of Holty's truck. The terms of the policy could not more clearly exclude this situation from coverage.

II. The Holtys and the Junkos argue that the entire truck is a farm implement and not a motor vehicle. We agree with North Star that *Farm Bureau Mutual Insurance Co. v. Sandbulte*, 302 N.W.2d 104 (Iowa 1981), is dispositive of this argument. In *Sandbulte* the insured argued that his pickup, which was involved in a highway accident, should be treated as a farm machine because it was mainly used on his farm premises to haul feed, hay and fuel. *Id.* at 114. Sandbulte's farm liability policy contained language strikingly similar to language in the Holtys' policy:

Motor vehicle—means a land motor vehicle, tractor or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto) but does not include, except while being towed by or carried on a motor vehicle any of the following:

. . . .

b. farm tractor, farm trailer, farm implement or farm machinery while such equipment is used in connection with farm premises;

c. any other mobile farm equipment not licensed for motor vehicle registration and used exclusively on an insured farm premises except for occasional travel from one insured farm premises to another insured farm premises; or

d. if not subject to motor vehicle registration, any other equipment which is designed for use principally off public roads.

*Id.* at 114.

■ The trial court submitted a special verdict to the jury in which they were asked to respond as to whether or not "the ordinary person would conclude that the policy term 'motor vehicle' included the Sandbulte pickup." *Sandbulte*, 302 N.W.2d at 114. The jury responded in the

negative. Nevertheless, we rejected Sandbulte's argument:

The Sandbulte pickup was clearly "designed" for highway use under the policy definition, *regardless of the actual use made of it.* And the fact it was being driven on the highway at the time of the accident attests to the fact it was, at least occasionally, being used as a highway vehicle. It was licensed as a motor vehicle and was insured as such. The policy definition was not ambiguous and the court should have so concluded as a matter of law.

(Emphasis added.) *Id.* at 114–15. We believe the same reasoning applies here. At the time of the accident Holty's truck still had a windshield, rear view mirror and lights. It was used on public roads and was licensed and insured as a motor vehicle from 1967 to 1982. Although the truck was primarily used in Holty's farming operations at the time of the accident, it was still clearly designed for highway use under the policy definition. We hold that the Holty truck is a motor vehicle as that term is used in the policy. The policy definition of "motor vehicle" is not ambiguous and the district court should have so concluded as a matter of law. *See id.* at 115.

Our interpretation is "consistent with the very nature of a farm liability policy. The operation of automobiles owned by an insured is a separate and distinct risk from the type for which persons ordinarily purchase farm liability insurance." *Cairns v. Grinnell Mutual Reinsurance Co.*, 398 N.W.2d 821, 825 (Iowa 1987). As we said in *Sandbulte*,

[m]otor vehicle usage greatly expands the exposure to liability, and it is not reasonable to expect insurance on motor vehicles as an appendage to a premises liability policy at a premium much lower than that for comparable limits in a motor vehicle policy.

302 N.W.2d at 113.

Junko's injury arose out of the maintenance and use of Holty's truck, which we hold to be a motor vehicle. Therefore, no coverage exists for the highway accident in

question under the farm liability policy. Consequently, North Star has no duty to defend the Holtys.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED.