ROCKFORD MUTUAL INSURANCE COMPANY *et al.*, Plaintiffs-Appellants, v. STEVEN SCHUPPNER *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—88—2069

Opinion filed May 1, 1989.

Grossman, Solomon & Fielkow, P.C., of Lincolnwood, and Pretzel & Stouffer, Chartered, of Chicago (Arnold D. Fielkow and Robert Marc Chemers, of counsel), for appellants.

Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora (John R. Wienold and Donald C. Bevins, of counsel), for appellees.

JUSTICE QUINLAN* delivered the opinion of the court:

Plaintiffs, the Rockford Mutual Insurance Company (Rockford) and the Kane County Mutual Insurance Company (Kane), filed a declaratory judgment action in the circuit court of Cook County, seeking a declaration that they were not liable under a farm tenant insurance policy issued to defendants Steven Schuppner and Paul Schuppner for the damages which arose from an automobile accident involving Steven Schuppner and Marc Eldridge. Defendants in the case include Steven and Paul Schuppner, the insureds, and Mitchell and Cheryl Eldridge, individually and as parents and next friends of Marc Eldridge, who were the plaintiffs in a separate suit against the Schuppners for the damages Marc Eldridge sustained in the accident on June 18, 1985. Plaintiffs here, Rockford and Kane, filed a motion for summary judgment asking that judgment be entered in their favor. The defendants countered by filing a cross-motion for summary judgment. The circuit court denied plaintiffs' motion and granted defendants' motion, ruling that plaintiffs were liable for the accident under their farm tenant policy. Plaintiffs have now appealed that decision to this court. We reverse.

---

*Justice Quinlan participated in this decision prior to his assignment to the sixth division.

The underlying accident in this case occurred on June 18, 1985. Steven Schuppner, who was driving a 1978 Chevrolet truck with a trailer attached, collided with Marc Eldridge, who was riding his bicycle. Thereafter, Mitchell and Cheryl Eldridge, individually and as parents and next friends of Marc Eldridge, a minor, filed suit against Paul Schuppner and against Steven Schuppner, individually and as the agent of Paul Schuppner. Steven Schuppner and Paul Schuppner, Steven's father, were co-owners of the truck that was involved in the accident.

At the time of the accident, the truck was insured under an automobile insurance policy by the County Mutual Insurance Company (County Mutual). Paul Schuppner was the only named insured on the County Mutual policy, but the Schuppners also had a farm tenant insurance policy with the plaintiffs here, Rockford and Kane, in which both Paul and Steven were named. The farm tenant insurance policy contained an exclusion for *"bodily injury* or *property damage* \*\*\* arising from the ownership, maintenance, operation, use, loading or unloading of \*\*\* any *motor vehicle* or any *recreational motor vehicle* owned by, loaned to or operated by an *Insured"* (emphasis in original); however, the policy provided that it would cover a motor vehicle or recreational motor vehicle on the insured location if the vehicle was not licensed for road use or was used exclusively on the insured location. The policy defined motor vehicle as a "motorized land vehicle, trailer or semi-trailer (including any attached machinery or apparatus), designed principally for travel on public roads." And, noteworthy for purposes of the contentions in this case, the policy then excluded farm implements or farm machinery from its definition of a motor vehicle, unless they were towed by or carried on a motor vehicle.

After the accident of June 18, 1985, the Schuppners tendered the defense and indemnity of the Eldridge accident to County Mutual, under the terms of the automobile policy that Paul Schuppner maintained with County Mutual and, subsequently, County Mutual undertook the defense of the Eldridge lawsuit. Approximately 11 months after tendering the lawsuit to County Mutual, the Schuppners also tendered the defense and indemnity of the Eldridge suit to Rockford and Kane, claiming coverage under their farm tenant insurance policy with Rockford and Kane.

After receipt of the request for coverage, Rockford and Kane filed this complaint for declaratory judgment in the circuit court of Cook County, seeking a determination of their obligations under the policy. Rockford and Kane asserted that the accident between Steven

Schuppner and Marc Eldridge fell within the motorized vehicle exclusion of its farm tenant policy and, accordingly, asked the court to enter a declaratory judgment finding that they had no obligations under the policy. The Schuppners filed an answer in which they claimed that the motor vehicle exclusion did not apply to the Eldridge accident and requested the court to deny plaintiffs' request.

Later, at the request of Rockford and Kane, Steven Schuppner and Paul Schuppner both gave depositions in connection with the declaratory judgment case. In Steven Schuppner's deposition, Steven said that he obtained the farm tenant insurance policy through an insurance broker, David Werdin, but had never discussed with Werdin whether the farm tenant policy would cover an accident involving his truck and trailer. He also stated that he never read the section of the policy dealing with motor vehicle exclusions. Concerning the accident, Steven testified that it occurred on a public road as he was driving a 1978 Chevrolet truck, which properly displayed Illinois license plates. Steven asserted that the truck was generally used for farming, but he also estimated that it was used approximately once a week for non-farming purposes. The trailer, which was attached to the truck, was borrowed from a neighbor and did not have a license on it, but it did display a "slow moving vehicle" sign. At the time of the accident, Steven said he was driving the truck and trailer home from baling hay on some property that he and Paul Schuppner rented. Steven stated that he guessed the distance between his home and the rented property was about one-half a mile.

In Paul Schuppner's deposition, Paul also said that the farm tenant insurance policy was obtained through David Werdin and further stated that he, like Steven, did not remember ever discussing with Werdin whether an accident involving his truck and trailer would be covered by the farm policy. Paul testified that he never used the truck for non-farming purposes, nor did he remember his family ever using the truck for non-farming purposes. However, Paul did recall that the truck had been used in the past to move furniture.

Rockford and Kane then filed their motion for summary judgment contending, on the basis of those depositions and the language of their policy, that there was no genuine issue of material fact and that it was clear that the Eldridge accident fell within the motor vehicle exclusion in their insurance policy. The defendants responded by filing a cross-motion for summary judgment asserting that while there was no genuine issue of fact, the evidence established that the Eldridge accident was in fact a covered occurrence under the policy. The trial court, as noted above, denied plaintiffs' motion for summary judg-

ment and granted defendants' cross-motion. The trial court ruled that the accident was a covered occurrence, and that the determining factor in finding that the occurrence was covered was, in its judgment, the purpose for which the vehicle had been used, which the court found here to be a farm purpose. Also, in denying Rockford and Kane's motion for summary judgment, the court said, "The fact that the vehicle has four wheels and travels on a public road does not make it a motor vehicle *** within the meaning of this insurance policy ***." Following the court's ruling, Rockford and Kane filed a motion for rehearing, which the trial court denied. This appeal followed.

On appeal, Rockford and Kane again contend that the Schuppner's truck fell within the motor vehicle exclusion in their insurance policy and that, therefore, the trial court erroneously ruled that the truck was covered by their policy. In addition, Rockford and Kane assert that the Schuppners' truck could not properly fall within any exception to the motor vehicle exclusion, and the trial court's ruling that it did was erroneous. The Schuppners argue, on the other hand, that their truck was a farm implement and that, consequently, the trial court's application of the policy exception was proper, as was its entry of summary judgment in their favor.

■ The construction of an exclusionary provision in an insurance contract is a question of law for the courts. (*Rusk Aviation, Inc. v. Northcott* (1986), 151 Ill. App. 3d 126, 129-30, 502 N.E.2d 1309, 1312.) In an action to construe an insurance policy, as in other actions, summary judgment is appropriate when there is no genuine issue of material fact and the court can decide the issue as a matter of law. (*Rusk Aviation*, 151 Ill. App. 3d at 129, 502 N.E.2d at 1312.) Moreover, if an insurance policy is not ambiguous, a court must construe the policy as written. *Rusk Aviation*, 151 Ill. App. 3d at 129, 502 N.E.2d at 1312.

On appeal, both sides concede that the insurance policy here is not ambiguous, but, nonetheless, present their own interpretation of the policy. As the parties observe, this appears to be a case of first impression in Illinois. Plaintiffs and defendants both cite cases from other jurisdictions which have considered this issue, in support of their position that the Schuppners' truck was or was not a farm implement. Accordingly, we will briefly discuss those cases.

In *North Star Mutual Insurance Co. v. Holty* (Iowa 1987), 402 N.W.2d 452, cited by the plaintiffs, the Iowa Supreme Court held that a farmer's truck, which had been involved in a highway accident, was a motor vehicle excluded from coverage under a farm liability policy rather than a farm implement which would have been covered under

the policy. In holding that the truck was a motor vehicle and not a farm implement, the court found it important that the truck there had a windshield, rear view mirror and lights, was used on public roads, had been licensed and insured as a motor vehicle in the past (even though at the time of the accident the license and insurance had both lapsed), and finally, that the truck had clearly been designed for highway use, although it was primarily used for farming by the claimant. *North Star*, 402 N.W.2d at 456.

The Iowa Supreme Court's decision in *North Star* was based in part on an earlier Iowa Supreme Court decision, *Farm Bureau Mutual Insurance Co. v. Sandbulte* (Iowa 1981), 302 N.W.2d 104. In the *Sandbulte* case, the Iowa Supreme Court had reversed a trial jury's finding that a pickup truck was covered under a farm liability policy. In that case, the insured had argued in the trial court and on appeal that the truck there was a farm implement because it had been mainly used on farm premises to haul hay, feed and fuel. (*Sandbulte*, 302 N.W.2d at 114.) However, the Iowa Supreme Court on review disagreed and said:

> The *** pickup [truck] was clearly 'designed' for highway use under the policy definition, regardless of the actual use made of it. And the fact it was being driven on the highway at the time of the accident attests to the fact it was, at least occasionally, being used as a highway vehicle. It was licensed as a motor vehicle and was insured as such. The policy definition was not ambiguous and the court should have so concluded as a matter of law." (*Sandbulte*, 302 N.W.2d at 114-15.)

Thus, the *Sandbulte* court ruled that the pickup truck could not be covered by the farm tenant insurance policy as a farm implement.

Another case supporting Rockford and Kane's position is *O'Quinn v. Wedlock* (La. App. 1983), 428 So. 2d 873. In *O'Quinn*, the argument made there was that a Honda ATC "three-wheeler" was a farm implement covered by a homeowner's insurance policy because the three-wheeler had been mainly used to check farm fence lines and farm animals. (*O'Quinn*, 428 So. 2d at 874.) The Louisiana Appellate Court disagreed and held that even if the vehicle was used primarily for farming purposes, it was not an implement in the usual sense of the word. (*O'Quinn*, 428 So. 2d at 874.) The *O'Quinn* court adopted the Webster's Third New International Dictionary's definition of "implement" as "an article to equip, a tool or utensil forming part of equipment for work, or one that serves as an instrument or tool," and held that a self-propelled motor vehicle could not be classified under that definition as a farm implement. *O'Quinn*, 428 So. 2d at 874.

The Schuppners, however, cite cases in which they contend that courts reached an opposite result, and assert that these cases are more persuasive. In *Utah Farm Bureau Mutual Insurance Co. v. Orville Andrews & Sons* (Utah 1983), 665 P.2d 1308, the Utah Supreme Court affirmed a trial court's ruling that a truck which had been involved in a traffic accident was a farm implement and not a motor vehicle, and, hence, was covered by the farm liability policy there. That court ruled that even though the term "farm implement" was not defined in the insurance policy, the term "farm implement" was synonymous with "implement of husbandry," which was defined in Utah's Motor Vehicle Act as a vehicle designed for agricultural purposes and used by the owner exclusively for agricultural purposes. (*Utah Farm Bureau*, 665 P.2d at 1310.) The Utah Supreme Court found that the truck there was an implement of husbandry because a feeder box had been welded to the truck so that the truck could be used for agricultural purposes and that the truck was, in fact, used exclusively for agricultural purposes for a decade. (*Utah Farm Bureau*, 665 P.2d at 1310.) Additionally, the Utah court noted in its decision that the feeder truck had never been registered as a motor vehicle and had never been listed on the vehicle schedule of its owner's automobile insurance policy, even though the owner had registered and insured his other trucks. *Utah Farm Bureau*, 665 P.2d at 1309.

In a North Dakota Supreme Court case cited by the Schuppners, the court there affirmed a jury's finding that an accident involving a pickup truck was covered by the owner's farm liability policy. (*Heitkamp v. Milbank Mutual Insurance Co.* (N.D. 1986), 383 N.W.2d 834.) In that case, the pickup truck was purchased for use on a farm and was depreciated on the owner's income tax return as an expense of farming, although it was also used for non-farming purposes. (*Heitkamp*, 383 N.W.2d at 836.) The *Heitkamp* court held that the farm liability policy was ambiguous, and the court said under such circumstances a jury could properly resolve the ambiguity against the insurer. *Heitkamp*, 383 N.W.2d at 837.

Despite this holding in *Heitkamp*, the North Dakota Supreme Court in *Walle Mutual Insurance Co. v. Sweeney* (N.D. 1988), 419 N.W.2d 176, later affirmed another trial court's finding that a pickup truck used solely for farming purposes was in fact a motor vehicle and excluded from coverage under a farm liability policy. The *Walle Mutual* court said that while the insurance contract there was also ambiguous, a court need not always construe an ambiguous contract in favor of the insured, if there was evidence to support a contrary interpretation. (*Walle Mutual*, 419 N.W.2d 176.) The court in *Walle*

*Mutual* noted that the evidence there showed that neither the insured nor the insurer intended the farm policy to cover a pickup truck; the insurance agent had said he normally told insurance applicants that a motor vehicle was not covered by farm policies; the application for the farm policy contained no questions concerning motor vehicles; and the cost of the farm policy there was much less than the cost of the insured's automobile insurance. (*Walle Mutual*, 419 N.W.2d at 181.) Under those circumstances, the *Walle Mutual* court concluded that the insured must have known that his farm policy would not cover his pickup truck and, thus, it was not erroneous in that case for the trial court to construe the policy against the insured. *Walle Mutual*, 419 N.W.2d at 181.

Rockford and Kane claim that their insurance policy here should be construed in accordance with the cases they cite which hold that a vehicle is not a farm implement. They contend that this is the proper construction since the Schuppners' truck clearly fits the definition of a motor vehicle. The truck is, they argue, a motorized vehicle designed principally for travel on public roads and was licensed and registered with the State as a motor vehicle, used on the public roads, not modified in any way by the Schuppners for any particular farm usage, and also had all the basic features of every motor vehicle, such as seat belts, turn signals and bumpers.

Moreover, Rockford and Kane assert that the truck could not properly be construed to be a farm implement because the terms "motor vehicle" and "farm implement" are mutually exclusive and a "farm implement" should be defined consistently with the Illinois Vehicle Code's definition of an "implement of husbandry," which is a vehicle "designed and adapted exclusively for agricultural, horticultural, or livestock raising operations." (See Ill. Rev. Stat. 1987, ch. 95½, par. 1—130.) The Schuppners' truck does not, they argue, fit this definition and the Schuppners' own actions here in registering the truck and insuring the truck under their automobile policy demonstrates that even the Schuppners did not believe that their farm policy covered their truck.

Conversely, the Schuppners submit that the terms "motor vehicle" and "farm implement" are not mutually exclusive and, although their truck may be a motorized vehicle, it is also a farm implement. The Schuppners argue that it is the purpose for which the vehicle is used that determines whether the vehicle is a farm implement or not.

The Schuppners assert that this court should not use the Illinois Vehicle Code's definition of "implement of husbandry" to define "farm implement," but instead should use the ordinary, dictionary

definition, which they claim defines implement as "any article or device used or needed in a given activity." (See Webster's New World Dictionary 705 (2d ed. 1980).) Applying this definition, the Schuppners contend, establishes that the truck was clearly a farm implement since it was used in farming activity. Most importantly, the Schuppners observe, is the fact that the underlying accident here occurred while Steven Schuppner was returning from a farm field and, thus, was actually engaged in farming operations at the time of the accident.

■ As noted previously, the construction of an exclusionary provision in an insurance contract is a question of law. (*Rusk Aviation*, 151 Ill. App. 3d at 129-30, 502 N.E.2d at 1312.) When a question of law is presented to a reviewing court, the reviewing court need not defer to' the trial court's reasoning or findings regarding questions of law, but may conduct its own independent review. (*In re Marriage of Skinner* (1986), 149 Ill. App. 3d 788, 791, 501 N.E.2d 311, 313.) Therefore, the trial court's finding here that the Schuppners' truck was mainly used for farming purposes has no effect on whether, as a matter of law, the truck was a motor vehicle or a farm implement within the policy.

■ After considering the arguments of both parties, we must agree with Rockford and Kane that the Schuppners' truck was a motor vehicle and not a farm implement. We specifically disagree with the trial court that the determinative factor here was the purpose for which the vehicle was used. If this court were to simply employ that test, the definition of farm implement could conceivably cover anything used on a farm. Consequently, many vehicles clearly not actually intended for farm use could be considered farm implements if we were to use this definition. We believe such a definition is too broad and not reasonably intended under the contract. We believe that the determinative factor more appropriately is whether the vehicle was designed for use on public roads or intended as a farm implement. Such an interpretation is, in our opinion, more consistent with the insurance policy's intended coverage.

Applying this test to the vehicle here, it is clear that the Schuppners' truck was a motor vehicle. The trial record established that the Schuppners' truck was registered and licensed as an automobile, was insured under an automobile policy, and was, in fact, an ordinary, basic 1978 Chevrolet truck. Moreover, the Schuppners never claimed that the truck had been modified or adapted in any way specifically for use for farm purposes. Furthermore, we believe that the cases more analogous to our case are those cited by the plaintiffs which hold that a motor vehicle is not a farm implement. The cases

cited by the defendants are distinguishable from this case. For example, the court in the *Heitkamp* case cited by defendants acknowledged that while there were good arguments for either including or excluding a truck from the category of farm implement, since the policy there was ambiguous, the jury could have, as it did, properly construed the policy there against the insurer. (See *Heitkamp*, 383 N.W.2d at 837.) Here, both sides conceded that the policy was not ambiguous, and a policy that is not ambiguous must, as noted earlier, be construed as written. *Rusk Aviation*, 151 Ill. App. 3d at 129, 502 N.E.2d at 1312.

The *Utah Farm Bureau* case cited by the Schuppners is also distinguishable from the present case. There, the truck had never been registered as a motor vehicle, had never been insured as a motor vehicle, and had actually been specifically adapted for agricultural use. (*Utah Farm Bureau*, 665 P.2d at 1309-10.) Here, as stated, the Schuppners' truck was registered and insured as a motor vehicle and was not adapted for agricultural use in any way.

We find this case to be most similar to the cases decided by the Iowa Supreme Court in *North Star* and *Sandbulte*. In those cases, as in this case, the farm tenant policies were found not to be ambiguous (see *North Star*, 402 N.W.2d at 456; *Sandbulte*, 302 N.W.2d at 115); the pickup trucks, although mainly used for farming, were also registered and insured as motor vehicles (see *North Star*, 402 N.W.2d at 456; *Sandbulte*, 302 N.W.2d at 115); and as here, the trucks were designed for use on public roads (see *North Star*, 402 N.W.2d at 456; *Sandbulte*, 302 N.W.2d at 114-15). Under those circumstances, the court found that the pickup trucks were motor vehicles and not farm implements. We find the factual situation here to be similar and the reasoning of the Iowa court to be persuasive.

■ Alternatively, the Schuppners argue that if this court reverses the summary judgment entered in their favor, we should not automatically enter summary judgment for plaintiffs, but should remand the case for a determination of whether the pickup truck here was principally designed for use on public roads. This is necessary, the Schuppners say, because they claim that it was never determined that the truck was designed principally for use on the public roads.

We disagree. The record here more than adequately demonstrates that the Schuppners' truck was principally designed for use on public roads and was, therefore, a motor vehicle within the meaning of the policy and, accordingly, should have been excluded from coverage under the plaintiffs' farm tenant policy. As such, Rockford and Kane were entitled to summary judgment on their behalf in their declara-

908

tory judgment suit.

For all of the foregoing reasons, we reverse this case and remand the case to the Cook County circuit court with directions to the trial court to enter summary judgment for Rockford and Kane upon remand.

Judgment reversed and remanded with directions.

MANNING, P.J., and CAMPBELL, J., concur.