KNEIPP, Admr., Appellant, et al.

v.

HERRON et al., Appellees.

[Cite as *Kneipp v. Herron* (1991), 76 Ohio App.3d 460.]

Court of Appeals of Ohio,
Clermont County.

No. CA91–05–035.

Decided Dec. 2, 1991.

*Lindhorst & Dreidame* and *Stephen A. Bailey,* for appellant Dolores Kneipp.

*McIntosh, McIntosh & Knabe* and *Bruce B. McIntosh,* for appellee United Ohio Insurance Company.

JONES, Presiding Judge.

Plaintiff-appellant, Dolores Kneipp, Administrator of the Estate of Rebecca A. Hunley, deceased, appeals a judgment of the Clermont County Court of Common Pleas which held that defendant-appellee, United Ohio Insurance Company ("United Ohio"), appropriately denied appellant's claim for coverage under a farm owner's insurance policy United Ohio issued to defendant-appellee, Eddie Dale Stroub.[1]

The relevant facts as stipulated to by the parties indicate that Stroub and defendant-appellee, Harold Herron, were engaged in the farming business and together worked approximately seven hundred acres of land. Two of the

---

1. Ronald Hunley, father and next friend of Christopher Hunley, a minor, and Ronald Hunley, individually, also filed notices of appeal. These parties have not, however, filed briefs or otherwise participated in this appeal.

parcels of land farmed by Stroub and Herron were located at 4515 Sharps Cutoff Road and 4976 Monterey–Maple Grove Road. The two locations are approximately three miles apart.

On November 2, 1986, Herron and Stroub were transporting corn from the Sharps Cutoff Road farm to the farm located at Monterey–Maple Grove Road for the purpose of storing the grain in bins located on the site of the latter location. The two men were using Stroub's 1972 Chevrolet straightbed truck. While en route to the Monterey–Maple Grove Road location, the truck, operated by Herron, collided with an automobile at the intersection of Sharps Cutoff Road and Jackson Pike. The operator of the automobile, Rebecca Hunley, died as a result of injuries sustained in the collision.

On March 15, 1989, appellant was granted a $410,000 judgment against Herron and Stroub, which remains unsatisfied in the amount of $297,500. Appellant subsequently filed a supplemental complaint against United Ohio, seeking to satisfy the outstanding judgment on the policy United Ohio issued to Stroub. United Ohio denied coverage based upon the policy's provisions which excluded coverage for liability arising out of the use of motorized vehicles. After hearing oral arguments and taking the matter under advisement, the trial court issued a decision on March 22, 1991, in which it upheld United Ohio's denial of coverage. It is from that decision and subsequent judgment entry that appellant appeals.

In a single assignment of error, appellant claims the trial court erroneously determined that there was no coverage under United Ohio's policy with Stroub for the accident involving appellant's decedent. Specifically, appellant argues that the truck in question was a "farm implement" and not excluded by the policy. In the alternative, appellant submits that even if the truck was a "motorized vehicle," there is still coverage under the policy since the accident occurred on the insured premises.

The policy United Ohio issued to Stroub provided liability coverage for the premises at 4976 Monterey–Maple Grove Road and 4515 Sharps Cutoff Road. The declarations page did not include the 1972 Chevrolet truck or any other motor vehicle licensed by the state of Ohio as a covered vehicle. The exclusions section of the policy specifically provided that liability coverage would not apply to any occurrence "[r]esulting from ownership, maintenance, use, loading or unloading by an insured of *motorized vehicles* * * *." (Emphasis added.) The policy also defined "motorized vehicle" as:

"Any self-propelled or amphibious vehicle (regardless of horsepower, number of wheels or method of surface contact) including parts and equipment (this does not include small motorized equipment for the service of the insured

premises such as power lawn mowers and snow blowers). The following categories of motorized vehicles have specific meanings as used in this policy:

"A. Motor vehicles means a motorized vehicle, trailer or semi-trailer (including any attached machinery or apparatus):

"(1) Subject to motor vehicle registration; or

"(2) Designed for use or travel on public roads[.] * * * "

The policy did, however, provide an exception to the exclusion and allowed coverage for "incidental motorized vehicles" when bodily injury:

"*Occurs on* the *insured premises* and *results from* the ownership, maintenance, *use,* loading or unloading of:

"(1) *Motorized vehicles not subject to* motor vehicle *registration* because of their type or use; * * *

"*Occurs anywhere* and results from:

" * * *

"(3) *Motorized vehicles* designed exclusively for use off public roads and used *principally to service* the *insured premises.*" (Emphasis added.)

The phrase "insured premises" was defined as:

"(1) The farm premises described in the declarations;

"(2) The other land you use for farming purposes;

" * * *

"(7) Approaches and access ways immediately adjoining the insured premises."

Finally, a custom farming endorsement incorporated with the policy provided that:

"By attachment of this Endorsement to the policy, Personal Liability and Medical Payments to other coverages are extended to include the Custom Farming Activities of an insured. *Custom Farming* means *farming done for others* under a contract and *includes the use of farm* tractors, farm trailers, *implements,* draft animals and other farm machinery—other than motor vehicles—used in performing the work." (Emphasis added.)

In a well-written decision, the trial court concluded that the 1972 Chevrolet truck was both a motorized vehicle and motor vehicle and subject to the policy's exclusions. Although the truck was used primarily for farming operations, and subject to the special licensing procedures of R.C. 4503.-04(K)(5), the truck was nevertheless subject to motor vehicle registration requirements and still viewed as a motor vehicle. As the trial court noted, even if the special licensing procedures exempted the truck from the definition

of "motor vehicle," " * * * the truck would still fall within the definition of motor vehicle because the truck was designed for use or travel on public roads * * * regardless of the fact that the truck was primarily used upon the farm * * *." See *North Star Mut. Ins. Co. v. Holty* (Iowa 1987), 402 N.W.2d 452, 456; *Farm Bur. Mut. Ins. Co. v. Sandbulte* (Iowa 1981), 302 N.W.2d 104, 114–115; *Rockford Mut. Ins. Co. v. Schuppner* (1989), 182 Ill.App.3d 898, 905–906, 131 Ill.Dec. 357, 361, 538 N.E.2d 732, 737.

Appellant further asserts that the truck qualifies as a "farm implement" and, as such, is mutually exclusive from the policy's definition of motor vehicle. See *Heitkamp v. Milbank Mut. Ins. Co.* (N.D.1986), 383 N.W.2d 834. Although the policy involved in the *Heitkamp* decision defined "implement" and "motor vehicle" so as to make the terms mutually exclusive, we agree with the trial court's observation that: " * * * a plain and simple reading of the policy at issue here indicates that the two are not mutually exclusive. The farm truck may then actually be both a farm implement and a motor vehicle, but in any event, the motor vehicle classification is dispositive and precludes coverage."

■ Appellant's alternative argument is that even if the truck is a motor vehicle, the accident occurred on an "access way immediately adjoining the insured premises," thereby permitting coverage for bodily injury resulting from a motor vehicle used principally to serve the insured premises. In rejecting this argument, we again look to the trial court's decision in which it noted that "[i]n order for an accident to be covered, it had to have occurred on a way touching or abutting the insured premises *at the point of occurrence*," *Sandbulte, supra*, 302 N.W.2d at 108–110. A similar rationale was also utilized by the court in *Connolly v. Standard Cas. Co.* (1955), 76 S.D. 95, 73 N.W.2d 119. The trial court also observed that in *Ky. Farm Bur. Mut. Ins. Co. v. Cook* (Ky.App.1978), 590 S.W.2d 885, 891, the court held that:

"The reason for such exclusions is very simple. Operation of a motor vehicle on public highways involves greater risks than operation of the same vehicle on privately owned farms. Coverage for off-premises use of motor vehicles is ordinarily procured as automobile public liability insurance."

We agree that the intersection of Sharps Cutoff Road and Jackson Pike did not immediately adjoin and was not part of the insured premises. Consequently, coverage is not available under the policy provision providing coverage for incidental motorized vehicles.

■ Generally, the language of an insurance contract must be construed most strongly against the insurer and provisions reasonably susceptible of more than one interpretation must be construed strictly against the insurer

and liberally in favor of the insured. *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 543 N.E.2d 488. However, "[t]he fundamental goal in insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety, and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect." *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, 88. The general rule of liberal construction cannot be employed to create ambiguities where none exist. *Id.*

Accordingly, we conclude that the trial court correctly determined that United Ohio had appropriately denied coverage on appellant's claim. Appellant's assignment of error is not well taken and is hereby overruled.

*Judgment affirmed.*

KOEHLER and HENDERSON, JJ., concur.

JOHN W. HENDERSON, J., of the Clark County Court of Common Pleas, sitting by assignment.