FARMERS AUTOMOBILE INSURANCE ASSOCIATION, Plaintiff-Counter-defendant-Appellant, v. COUNTRY MUTUAL INSURANCE COMPANY, Defendant and Counterplaintiff-Appellee (Helen S. Vance, as Ex'x of the Estate of Wilfred E. Vance, Deceased, Defendant-Counterdefendant; Lloyd T. Eyre *et al.*, Defendants).—FARMERS AUTOMOBILE INSURANCE ASSOCIATION, Plaintiff-Counterdefendant, v. HELEN S. VANCE, as Ex'x of the Estate of Wilfred E. Vance, Deceased, Defendant and Counter-defendant-Appellant (Lloyd T. Eyre *et al.*, Defendants; Country Mutual Insurance Company, Defendant and Counterplaintiff-Appellee).

Fourth District   Nos. 4—99—0340, 4—99—0350 cons.

Argued November 17, 1999.—Opinion filed January 7, 2000.

Robert Marc Chemers and Amy E. Johnson (argued), both of Pretzel & Stouffer, Chartered, of Chicago, for appellant Farmers Automobile Insurance Association.

Robert G. Kirchner (argued), of Lerner & Kirchner, of Champaign, for appellant Helen S. Vance.

Keith G. Carlson and Bruce L. Carmen (argued), both of Kilgallon & Carlson, of Chicago, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In July 1998, plaintiff, the Farmers Automobile Insurance Association (Farmers), filed an amended complaint for declaratory judgment regarding (1) its duty, if any, to defend Wilfred E. Vance, the decedent of defendant Helen S. Vance, and Wilfred's son, Dennis Vance, in two tort suits, and (2) the duty of defendant Country Mutual Insurance Company (Country) to defend the Vances in those same two suits. In November 1998, Country filed a counterclaim for declaratory judgment regarding its duty of coverage. Defendants Lloyd T. Eyre (No. 97—L—6) and Janet F. Lindauer, who appears individually and as special administratrix of the estate of her husband, Robert Lindauer (No. 97—L—11), are the plaintiffs in the underlying litigation, which involves an automobile collision allegedly caused by Wilfred's negligence. At the time of the occurrence, Wilfred was driving Dennis' grain truck in conjunction with Dennis' farm operation; Farmers provided Wilfred with an automobile liability insurance policy (auto policy), and Country provided Dennis with a farm liability policy (farm policy).

In March 1999, the trial court granted summary judgment in Country's favor, concluding that an exclusion in the farm policy for

claims arising out of the ownership or use of a motor vehicle (herein-after motor vehicle exclusion) applied. Wilfred appeals (No. 4—99—0350), and Farmers appeals separately (No. 4—99—0340). Both argue that the court erred in entering summary judgment in Country's favor. We reverse and remand.

## I. BACKGROUND

The allegations of the underlying tort actions are simple. In October 1996, Wilfred was operating Dennis' 1972 International Load-star 1600 grain truck on a two-lane public highway, with a trailer full of grain in tow. Wilfred was stopped, waiting to turn off the highway to unload at a grain elevator. Lloyd was driving his car on the same highway and approached Wilfred from behind. Janet and Robert were in another car heading toward the intersection from the opposite direction on the same road. Because Dennis' grain truck and trailer were not properly lit or otherwise marked for safe operation on a public highway, Lloyd did not see them in time to stop, and he swerved into the Lindauers' lane, causing substantial injury to all involved except Wilfred.

In early 1997, Lloyd sued Wilfred and Dennis (No. 97—L—6), alleging negligence. Janet and Robert made similar allegations in a separate suit (No. 97—L—11). Wilfred and Dennis tendered their defenses to Farmers and Country.

In July 1997, Farmers filed its complaint for declaratory judgment, naming only Wilfred, Lloyd, and Janet as defendants. (The court later allowed Farmers to substitute Janet with Janet in both her individual capacity and as special administratrix of Robert's estate. The record does not reflect when or how Robert died.) In July 1998, Farmers amended its complaint, added Country as a defendant, and claimed that the farm policy provided primary coverage for Lloyd and Janet's suits.

In November 1998, Country counterclaimed, claiming it had no duty to defend Dennis or Wilfred because the policy's motor vehicle exclusion applied. The first page of the farm policy Country issued to Dennis states the following:

"Everything about this policy has been designed with you, the policyholder, in mind—from its organization to the easy-to-understand language, and special section of defined words. *Please observe that all words in boldface type throughout the policy have special insurance definitions.*" (Emphasis added.)

The motor vehicle exclusion provides, in relevant part, as follows:

"Coverages *** do not apply to **bodily injury** or **property damage:**

\* \* \*

[A]rising from the ownership, maintenance, operation, use, loading or unloading of *** any **motor vehicle** *** which an **insured** owns, rents, or operates."

The policy defines the term "motor vehicle" as follows:

"**Motor Vehicle** means a motorized land vehicle, trailer, or semitrailer designed principally for travel on public roads. *** [T]he following are also considered motor vehicles when they are being towed by or carried on a motor vehicle:

1. ***;
2. farm implements;
3. farm machinery;
4. ***;
5. any equipment which is designed for use principally off public roads, and not licensed for road use."

In December 1998, Farmers and Country filed cross-motions for summary judgment. Neither insurer attached any additional exhibits to its motions; both relied on the pleadings and exhibits attached thereto.

In January 1999, Wilfred filed a memorandum in opposition to both insurance companies' motions for summary judgment. In an attached affidavit, Dennis stated the following: (1) the grain truck was sold only through farm implement and International Harvester truck dealers; (2) Dennis used the truck exclusively for farm operations; (3) the truck's maximum speeds were (a) 35 miles per hour when hauling or (b) 45 miles per hour empty; those speeds were possible only by exceeding the maximum recommended tachometer setting; and (4) the truck "was not designed principally for travel on public roads, but instead for use in farming operations and limited travel on public roads for the transportation of grain and farm materials." Dennis attached to his affidavit several International Harvester advertisements, which portrayed the truck as being well-suited for farm field work.

Country filed a responsive brief and attached the declaration page from an automotive insurance policy issued to Dennis. That declaration page showed that Dennis purchased automobile insurance for a 1972 International "farm truck," with the following notation: "Not-for hire over 1 ton, light, 0-50 mile radius, low." The remainder of the policy is not part of the record.

In March 1999, the trial court granted Country's motion for summary judgment and denied Farmers' cross-motion. Farmers filed notice of appeal (No. 4—99—0340), and Wilfred filed a separate notice of appeal (No. 4—99—0350). We consolidated these two appeals. In October 1999, Wilfred died. We allowed Helen, as administratrix of Wilfred's estate, to substitute for Wilfred as a party in this appeal.

## II. MOTOR VEHICLE EXCLUSION

Helen and Farmers argue that the trial court erred by granting Country's motion for summary judgment. We agree.

■ Summary judgment is appropriate only when the pleadings, depositions, admissions, and affidavits (1) fail to establish a genuine question of material fact (*Pekin Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 305 Ill. App. 3d 417, 419, 711 N.E.2d 1227, 1229 (1999)) and (2) show that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998). Accordingly, two questions are presented on review from an order granting summary judgment. The first is whether any genuine issues of material fact remain. The second is whether the trial court correctly interpreted the law. *McDonald v. Prudential Property & Casualty Co.*, 304 Ill. App. 3d 422, 423, 710 N.E.2d 556, 558 (1999). We review these questions *de novo*. *Pekin Insurance Co. v. Estate of Goben*, 303 Ill. App. 3d 639, 642, 707 N.E.2d 1259, 1261-62 (1999).

■ Insurance contracts must be construed and enforced so as to give effect to the parties' intent as expressed in the language of the document. *Goben*, 303 Ill. App. 3d at 642, 707 N.E.2d at 1262. When a policy includes a section with definitions, a court should enforce the definitions as stated in the policy, and the court's duty to apply the policy definitions is particularly strong when the definitions in the policy deviate from ordinary usage. *Filip v. North River Insurance Co.*, 201 Ill. App. 3d 351, 353, 559 N.E.2d 17, 18 (1990); see also *McDonald*, 304 Ill. App. 3d at 423, 710 N.E.2d at 558.

■ When determining whether an insurance provider has a duty to defend its insured in a lawsuit, a court should generally apply an "eight corners rule"—that is, the court should compare the four corners of the underlying complaint with the four corners of the insurance contract and determine whether the facts alleged in the underlying complaint fall within, or potentially within, the insurance policy's coverage. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 393, 620 N.E.2d 1073, 1079 (1993). When this procedure involves only legal issues, disposition by summary judgment is appropriate. *Crum*, 156 Ill. 2d at 391, 620 N.E.2d at 1077. However, in cases where the insurer's duty to defend is based on factual matters that cannot be determined by examining the underlying complaint, the trial court can hear evidence and make factual findings as long as they have no bearing upon the issues in the underlying litigation. *Fremont Compensation Insurance Co. v. Ace-Chicago Great Dane Corp.*, 304 Ill. App. 3d 734, 742-43, 710 N.E.2d 132, 138-39 (1999); *Millers Mutual Insurance Ass'n v. Ainsworth Seed Co.*, 194 Ill. App. 3d 888, 891-92, 552 N.E.2d 254, 256 (1989).

. ■ In this case, Country's duty to defend Dennis and Wilfred depends on whether Dennis' grain truck is a "motor vehicle" as that term is defined in Country's farm policy. The policy defines "motor vehicle," in pertinent part, as a motorized land vehicle "designed principally for travel on public roads." Resolving the question of whether the grain truck was so "designed" cannot be done by studying the allegations in Lloyd and Janet's complaints against Wilfred and Dennis. Further, resolving this question of fact will have no bearing on the issues in the underlying litigation. Thus, this question of fact, which remains unresolved, should have precluded summary judgment.

The relevant language of the farm policy required the trial court to determine what the grain truck was "principally" designed to do. This determination does not require the court to consider the truck's actual use or whether and how it was registered, licensed, or insured. See *Rockford Mutual Insurance Co. v. Schuppner*, 182 Ill. App. 3d 898, 906, 538 N.E.2d 732, 737 (1989) ("We specifically disagree with the trial court that the determinative factor here was the purpose for which the vehicle was [actually] used"). Instead, the court must focus on what International Harvester, as manufacturer of the truck, intended—that is, did International Harvester design this grain truck "principally for travel on public roads"? The grain truck either did or did not fall within the farm policy's definition of a motor vehicle *as it left the plant*, and nothing that subsequently occurred has any bearing on what the truck's manufacturer principally designed it to do.

We recognize that this is a peculiar inquiry and that it raises difficult questions, such as, who can competently testify regarding the intent of a large corporate manufacturer, like International Harvester? Nevertheless, this is the inquiry required by the language Country chose to employ, despite numerous alternative possibilities. For example, Country could have defined a motor vehicle as a motorized land vehicle (a) licensed for road use, (b) insured under an automotive policy, or (c) physically capable of traveling on public roads. In fact, these are the factors Country now contends that the courts should consider in determining whether the grain truck is a motor vehicle under its policy. In fairness, Country should not be permitted to define "motor vehicle" in its policy and admonish its policyholders to pay special attention to its "special insurance definitions," and then employ another (albeit simpler and more straightforward) definition when it is in Country's best interest to do so.

We view *Rockford*, the only other published opinion in Illinois discussing similar insurance policy language, as limited to its facts. In *Rockford*, the appellate court decided that "an ordinary, basic ***

Chevrolet [pickup] truck" was designed principally for travel on public roads. *Rockford*, 182 Ill. App. 3d at 906, 538 N.E.2d at 737-38. Although for reasons we have already explained, we might have decided *Rockford* differently, we understand how the *Rockford* court might have concluded that a pickup truck that is commonly seen on the public highways, mass produced, and driven by many different types of people in different capacities is designed principally for use on the public roads without further inquiring into the manufacturer's intent. This case, however, involves a truck that was built by a specialty manufacturer for a special purpose. What that purpose was remains unresolved.

Country attempts an appeal to "common sense," pointing out that the farm policy Country provided Dennis contemplated losses related to farming, not traffic accidents. The problem with Country's argument is that once a piece of equipment meets the policy's definition of a motor vehicle, claims arising from its operation, use, maintenance, loading, or unloading will fall under the exclusion without regard to whether the claim arises from an accident on a public highway or in the farmer's field. At oral argument, Country conceded that if the motor vehicle exclusion applies here, it would also apply to a farming accident involving the same grain truck somewhere off the public highway. We decline to decide this case based on the mere coincidence that it involves a traffic accident. Instead, the policy language must govern, however cumbersome its application.

Our conclusion that a material issue of fact remains follows from the forgoing discussion. The trial court had no competent evidence from which it could conclude whether the grain truck met the farm policy's definition of a motor vehicle. Most of the material presented to the court related to how Dennis actually used the truck in his farming operation. The only materials that were even marginally relevant to the question at hand were Dennis' descriptions of the truck's design limitations. .Those suggest that the truck had limited utility on the road and therefore may have been designed with some off-road purpose in mind as its principal use. However relevant, that information alone was not sufficient to determine the grain truck's principal purpose so as to warrant summary judgment in favor of Farmers.

Accordingly, we conclude that the trial court erred in granting summary judgment in Country's favor.

■ In so concluding, we reject the other grounds Farmers and Wilfred have raised for reversal—specifically, that (1) Country is estopped from raising this policy defense; and (2) Lloyd and Janet's complaints allege acts of negligence falling outside the motor vehicle exclusion. Regarding the first argument, Country correctly points out that our

supreme court has held that an insurer is not estopped from asserting policy defenses if it files a declaratory judgment action prior to judgment in the underlying suit. *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367, 374, 710 N.E.2d 1228, 1232 (1999). Here, Country filed its counterclaim in November 1998, and nothing in the record suggests that the underlying tort claims against Dennis and Wilfred were resolved prior to that time.

■ In their remaining argument, Farmers and Wilfred rely on *Louis Marsch, Inc. v. Pekin Insurance Co.*, 140 Ill. App. 3d 1079, 1085-86, 491 N.E.2d 432, 436-37 (1985), in which the appellate court construed a general liability insurance policy's automobile exclusion similar to the motor vehicle exclusion involved in this case. The *Louis Marsch* court concluded that negligent conduct unrelated to the operation of a motor vehicle falls outside the exclusion, even if a motor vehicle ultimately is the instrument causing injury. *Louis Marsch*, 140 Ill. App. 3d at 1085-86, 491 N.E.2d at 436-37. In this case, Lloyd and Janet have alleged numerous negligent acts, but each involves the standard of care that operators of motor vehicles or other mobile equipment on a public highway must exercise for the safety of others. In other words, all of the allegations involve conduct that will fall squarely within the motor vehicle exclusion if, on remand, the grain truck is found to be a "motor vehicle," as that term is defined in the farm policy.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings consistent with the views expressed herein.

Reversed and remanded.

MYERSCOUGH and KNECHT, JJ., concur.