MARIONJOY REHABILITATION HOSPITAL, Plaintiff, v. CEASAR J. LO *et al.*, Defendants and Third–Party Plaintiffs-Appellants (Union Bankers Insurance Company, Third–Party Defendant-Appellee; Alex Mishulovich, Third-Party Defendant).

Second District   No. 2—88—0802

Opinion filed March 3, 1989.

Barry G. Bollinger and John D. Kuhn, both of Brinton & Bollinger, of Chicago, for appellants.

John J. Mangan and Michael J. Wolfe, both of Rooks, Pitts & Poust, and Tribler & Marwedel, P.C., both of Chicago, and Frank E. Jeffers III, of Wheaton, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

This appeal arises from an order for summary judgment granted in favor of third-party defendant, Union Bankers Insurance Company (Union). Ceasar J. Lo and Cleotilde Lo, defendants and third-party plaintiffs, brought an action against Union seeking indemnification under a health insurance policy issued to Ceasar Lo. The trial court granted summary judgment in favor of Union, finding that Ceasar Lo had intentionally misrepresented material facts to Union in applying for insurance, thereby voiding any coverage obligation.

On appeal, the Los contend that (1) the trial court erred in granting summary judgment because there was an issue as to whether the Los acted to deceive Union, and (2) the trial court erred in granting summary judgment because Union is precluded from rescinding the insurance policy because it failed to comply with section 154 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 766). We affirm.

The insurance policy at issue was to cover Mr. Lo and the Los' son, Ceasar J. Lo, Jr. At the time that the policy was obtained, the Los' son was suffering from a condition known as hydrocephalus. As a result of this condition, surgery was performed in 1981, at which time a ventricular shunt was attached to his skull.

In November 1984, Mr. Lo was introduced to third-party defendant, Alex Mishulovich. Mishulovich was selling insurance policies on behalf of Union and other companies. During their November meeting, Lo provided Mishulovich with information about his son's brain surgery and the insertion of the ventricular shunt.

Sometime after their meeting, Mishulovich forwarded to Lo an application for an insurance policy with the John Alden Life Insurance Company. Lo completed the application and in so doing disclosed his son's condition relative to hydrocephalus and the fact that his son had a ventricular shunt placed in his skull. Lo mailed the application to Mishulovich and was subsequently informed that the application had

been denied.

Sometime in February 1985, Lo received through the mail a medical insurance policy from Union which provided coverage for his son. The policy was mailed to Lo by his employer, Oak Tree Liquors. Attached to the policy was a copy of the application. Lo had never seen the application, and the application had not been filled out by either himself or his wife. A sworn affidavit of Maureen Casey Owens, a forensic document examiner, stated that the signatures of Ceasar J. Lo on the application form and the policy were not actually those of Ceasar J. Lo.

Upon receipt of the policy, Lo contacted Mishulovich by telephone. Mishulovich informed Lo that he, Mishulovich, had in fact prepared the entire application. Lo asked Mishulovich what happened to the application because it appeared that all the questions were answered in the negative when it was known that Lo's son had had brain surgery. According to Lo, Mishulovich told Lo not to worry, that Mishulovich had prepared the application, and that Union was a very high risk insurance company.

At or near the same time he received the Union policy, Lo received a letter from the policy holders service department for Union. The letter requested that Lo examine a copy of the application attached to the policy to ensure that all of the information disclosed therein was correct. Specifically, the letter asked: *"Do we have all the right information about past health for you and your family?"* (Emphasis in original.) Attached to the letter was a checklist asking whether various information on the application was correct. Lo signed and returned the checklist to Union, indicating that all the information in the application was correct. Lo stated that with Mishulovich's assurance that there was nothing to worry about, he filed the insurance policy.

In April 1985, Lo's son suffered an injury to his head when he tripped and fell while running up a flight of stairs. A CT scan showed that there was a large subdural hematoma on the left side of the brain. A left frontal temporal parietal craniotomy and evacuation of the acute subdural was performed. There was no evidence that the preexisting condition of hydrocephalus had an impact on the injury or the treatment of the injury.

A claim was made to Union for medical bills related to the injury. Union denied the claim by rescinding the policy.

Plaintiff, Marionjoy Rehabilitation Hospital, instituted suit against the Los seeking payment for treatment of the Los' son. The Los then brought a third-party complaint against Union seeking reimbursement

for medical costs incurred on behalf of the Los' son. Union filed a motion for summary judgment on the basis that there were material misrepresentations made in the application for insurance which voided any obligation on the part of Union to provide insurance coverage for the Los' son. The trial court granted this motion, and the Los timely appealed.

We note that in cases appealed to the appellate court, Supreme Court Rule 341(e)(4)(ii) requires that an appellant's brief contain a statement of jurisdiction (122 Ill. 2d R. 341(e)(4)(ii)) and that the Los have not complied with the rule. While the fact that this rule has been effective only since August 1, 1988, may explain counsel's oversight, it is no excuse, and compliance will be expected in the future. We further note that in the instant case, we have jurisdiction under Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)).

The Los initially contend that the trial court improperly granted Union's motion for summary judgment. The Los contend that there remained a genuine issue of material fact as to whether the application for insurance submitted to Union was the result of any intentional misrepresentation made by the Los. The Los contend that because Mishulovich was Union's agent and because Mishulovich knew of the son's preexisting condition, Union cannot rely on the falsity of the answers contained in the application to rescind the policy.

In response, Union contends that the misrepresentations contained in the application are grounds for rescinding the policy because the Los knew of the existence of such misrepresentations. Union contends that the Los adopted and ratified the application when Mr. Lo returned Union's confirmatory letter stating that the application contained all the correct information and further contends that it is irrelevant when the misrepresentations occurred.

■ It has long been held in this State that when an applicant for insurance gives correct answers to the the insurer's agent, and the agent fills in the application with incorrect answers to be signed by the applicant, the insurer will be estopped from denying its liability. (*Guter v. Security Benefit Association* (1929), 335 Ill. 174, 180; *Germania Fire Insurance Co. v. McKee* (1880), 94 Ill. 494, 500.) Moreover, the insurer cannot rely on incorrectly recorded answers even when the insured knows that the agent has entered answers different from the ones he gave where the incorrect answers are entered pursuant to the agent's advice, suggestion, or interpretation. (*Logan v. Allstate Life Insurance Co.* (1974), 19 Ill. App. 3d 656, 660; see also *Good v. National Life & Accident Insurance Co.* (1976), 37 Ill. App. 3d 831, 834; *Boyles v. Freeman* (1974), 21 Ill. App. 3d 535, 539. But

see *Tesluk v. Metropolitan Life Insurance Co.* (1970), 130 Ill. App. 2d 290, 295 (the general rule does not apply when the party is acquainted with the circumstances plainly indicating that the agent will not advise the principal).) The fact that there is a clause in the application that the insured has verified the answers and statements as true does not prevent the knowledge of the agent from being imputed to the insurer. (See *Royal Neighbors of America v. Boman* (1898), 177 Ill. 27, 31-32; see also *Johnson v. Royal Neighbors of America* (1912), 253 Ill. 570, 574.) However, where the applicant has acted in bad faith, either on his own or in collusion with the insurer's agent, knowledge of the agent will not be imputed to the insurer. *Logan,* 19 Ill. App. at 661; see also *Royal Neighbors of America,* 177 Ill. at 32.

In the instant case, it was Union's agent, Mishulovich, who filled out the application while knowing the true medical history of the Los' son. If the tale ended here, we would find that Union could not rely on the misrepresentations contained in the application. (See *Logan,* 19 Ill. App. 3d at 660.) The tale does not, however, end at this point. Mr. Lo received a letter from Union requesting that he look over the application to make sure that the information that it contained was correct. Lo sent back to Union a form which indicated that the information on the application was indeed correct. We find this to be an affirmative action on the part of Lo independent of the agent which shows bad faith.

While it may be argued that in answering the letter as he did Mr. Lo was only continuing to follow the advice of Mishulovich, we believe that this argument asks too much. The rule which transfers the knowledge of the agent to the insurer was adopted in part because it was thought that an applicant would assume that the agent knew what information the insurer desired and how it should be expressed. (See *Royal Neighbors,* 177 Ill. at 32.) We find, however, that in a case such as the one now before us, the reason for the rule does not apply. First, the letter that was sent to the Los was a communication independent from the agent. The communication at least in part is an attempt by the insurer to avoid any problems that might arise due to unscrupulous agents and as such should be encouraged. Second, whereas the average applicant may be under the impression that the agent better knows what information the insurer desires, it is evident that such was not the fact in the case at bar. The Los knew the severity of their son's condition and had, on several other occasions, been turned down for insurance. The Los thus knew that their son's health was a material fact which an insurer would want disclosed. We therefore find that even had they been following the advice of the

agent, they were not justified in doing so, and Mr. Lo's answers in response to Union's inquiry thus showed bad faith. Under such circumstances, to allow a false representation to be continued by an insured with impunity would be to extend the theory of imputed knowledge to an extent which we are unwilling to do.

The Los also contend that the rescission of insurance was in violation of section 154 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 766) because the rescission was not based on a document attached to the policy but rather to the letter which confirmed the application. In response, Union contends that the rescission was based on the application which was attached to the policy. Union also contends that this was proper because the Los, by way of Mr. Lo's response to Union, ratified the application as being true.

Section 154 of the Illinois Insurance Code provides:

> "No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part thereof. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company." Ill. Rev. Stat. 1985, ch. 73, par. 766.

In *Inter-Insurance Exchange of the Chicago Motor Club v. Milwaukee Mutual Insurance Co.* (1978), 61 Ill. App. 3d 928, 931-32, the court defined the purpose of section 154 as follows:

> "The primary purpose of requiring the application to be attached to the insurance policy is to allow for objective evidence of negotiations at the time of application for the protection of the insured from possible frauds by insurance agents in falsifying the answers given by the insured in applying for the insurance. In such a case if the application is not attached to the policy, so that the insured can examine it carefully, he labors under the mistaken impression that he is protected by the insurance policy issued to him when, in fact, he may not have any coverage."

We find that there was no violation of section 154 in Union's rescission of the insurance policy. Union based its rescission on the application which was attached to the policy. We find that although the

application was not filled out by the Los, it can be said to have been filled out on their behalf and that rescission could therefore be based on misrepresentations made in the application. We make this finding because Mr. Lo returned the letter to Union in which it was stated that all information on the application was correct. We also find that, by filing a claim, the Los sought to benefit from both the policy and the application for the policy. We find that this is sufficient to conclude that the misrepresentations were made on the Los' behalf for purposes of section 154.

Finally, we note that our conclusion is not inconsistent with the purpose of section 154. Because the application was attached to the policy, the Los were aware of the terms under which the policy was issued. We find that in knowing that the answers in the application were false, and in light of their knowledge regarding the material nature of such answers, the Los could not have reasonably believed that their son was covered by the policy.

For the foregoing reasons we affirm the decision of the trial court.

Affirmed.

UNVERZAGT, P.J., and REINHARD, J., concur.