NO. 4-00-0933

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

DAVID WARREN and JANET WARREN,

          Plaintiffs-Appellants,

          v.

STANLEY A. BURRIS, M.D.,

          Defendant-Appellee.

)

)

)

)

)

)

)

)

  Appeal from

  Circuit Court of 

  Sangamon County

  No. 94L553

  Honorable

  Donald M. Cadagin,

  Judge Presiding.

______________________________________________________________

JUSTICE COOK delivered the opinion of the court:

In October 1994, plaintiffs, David and Janet Warren, filed a two-count complaint against defendant, Stanley A. Burris, M.D.  Plaintiffs' complaint alleges that on May 20, 1991, defendant performed surgery on David, consisting of a cholecystectomy (surgical excision of the gallbladder), operative cholangiography (X ray of the bile ducts), and an appendectomy; that the cholecystectomy was unnecessary; and that during the surgery, defendant severed the right hepatic duct and allowed a surgical clip to remain on the duct, thereby obstructing it and preventing the drainage of bile.  In February 1998, defendant filed a motion for summary judgment.  In June 2000, the trial court granted defendant's motion.  Plaintiffs appeal, arguing that (1) when David knew or should have known he was wrongfully injured is a genuine issue of material fact; (2) defendant's concealment of David's injury delayed discovery of the injury and should toll the statute of limitations; and (3) the trial court's finding as to fraudulent concealment precluded amendment of plaintiffs' complaint within the statute of limitations.  We reverse and remand.

I. BACKGROUND

In May 1991, David went to Memorial Medical Center with the following symptoms:  vomiting, abdominal pain, and dehydration, and he had lost about 25 pounds in the past three to four weeks.  He also had difficulty eating greasy or fatty foods and suffered abdominal pain that worsened after eating.  Before May 1991, David had been to the emergency room three times.  Also at that time, David had been disabled since a fall in November 1989 in which he injured his middle and lower back and his heel.  According to defendant, the back injuries themselves produced gas, bloating, and indigestion.

Dr. Raymond Pearson, David's original doctor, admitted David to the hospital.  Pearson suggested that David see a psychiatrist for depression.  Pearson informed David that depression could cause most or all of his symptoms.  In his deposition, David stated that he now believed many of the symptoms that he was suffering in May 1991 were caused by depression.  However, at the time, David believed that his illness was physical and that was part of the reason he asked to see another physician.  
  

David asked Dr. Alfred Harney, an internist, to examine him.  Based upon an ultrasound of David's abdomen, Harney diagnosed David with gallstones and asked defendant to examine David because he believed David had a surgical problem.  According to David, the woman who had performed the ultrasound on him told him that she did not see any gallstones.
  Before the May 20, 1991, surgery, Jimmy Warren, David's brother--who is not a physician--was the only person that told David that he should not have the surgery.  Defendant told David that he would feel much better after the surgery, and David believed that he would have a fast, speedy recovery.  David chose to go through with the surgery, and defendant performed the surgery on May 20, 1991. 

After the surgery, David's symptoms did not improve.  One of the doctors at the hospital told David that he did not see anything in David's report that would suggest the removal of the gallbladder.  

In fall 1991, David had the same complaints that he had prior to surgery.  David went to Dr. Mark Harrison, a gastroenterologist, who performed a liver biopsy on David.  Dr. William Drake, the pathologist who reviewed the biopsy, found that David was suffering chronic active hepatitis.  Harrison had another pathologist, Dr. Jordan Mann, review the biopsy.  Mann found that David had a mechanical large-duct obstruction.  Drake then issued a memorandum maintaining his position that David suffered from hepatitis, not a duct obstruction.  Harrison informed David of the two opinions and suggested that he undergo an endoscopic retrograde cholangiopancreatography (ERCP).  

In November 1991, Harrison performed the ERCP on David.  Harrison noticed the right side of the liver was not functioning normally, but he was unsure of the condition's causation.  Harrison told David that he suspected that David had a blockage of the biliary system.  In his deposition, Harrison stated that he believed he told David that defendant's surgery could have caused the blockage.  However, in his deposition David claimed that Harrison did not make that statement.  Harrison also suspected that David was suffering from depression because many of the symptoms that he was experiencing were consistent with depression.  Harrison referred David to a psychiatrist. 

In late 1991, Harrison recommended that David go back to defendant.  Defendant told David that he had an extra accessory duct that defendant had removed.  Defendant suggested that David needed exploratory surgery because a chance existed that he had cancer.  David refused to undergo surgery again.

In July 1992, David saw Dr. Phillip Johnson because David was having problems with elevated liver enzymes.  At that time, David did not feel his surgery was successful and suspected that defendant's surgery could have caused his liver problems.  In his notes, Johnson remarked that David told him that defendant had wanted to reopen his abdomen to look for surgical problems.  In his deposition, David denied saying that.  Johnson also discussed with David the fact that his liver enzymes had become elevated after defendant's surgery.  Johnson found no clear diagnosis and suggested that cancer or an anatomic variant could be the cause of the elevated enzymes.  

In September 1992, Harrison again examined David and diagnosed him with irritable bowel syndrome.  That same month, David also went to see Dr. Barbara Mulch, who referred him to Dr. Aliperti at Barnes Hospital in St. Louis.  At that time, David was still suffering the same symptoms that he had experienced before the surgery.  On October 21, 1992, David received a cholangiogram at Barnes Hospital.  The findings of the cholangiogram showed a "[c]omplete obstruction of the right hepatic lobe biliary system at the right level of the right hepatic duct, with adjacent surgical clips."  Aliperti told David that he needed to have surgery to remove the obstruction.  Because of anxiety over the surgery, David chose not to undergo the surgery.  In May 1993, David developed a bacterial infection in the liver and underwent a hepaticojejunostomy, which consisted of the creation of a permanent bypass around the right hepatic duct so that bile would be properly drained.  

On October 14, 1994, almost two years after the October 21, 1991, cholangiogram, plaintiffs filed their complaint against defendant.  In December 1998, defendant filed his motion for summary judgment, alleging that plaintiffs' cause of action is time-barred.  In February 1999, the trial court denied defendant's motion, finding a genuine issue about when David knew or reasonably should have known that his injury was wrongfully caused.  In April 2000, defendant filed a motion to reconsider the motion for summary judgment, relying on this court's decision in 
Wilson v. Devonshire Realty of Danville
, 307 Ill. App. 3d 801, 718 N.E.2d 700 (1999).  In June 2000, the trial court granted defendant's motion, finding that David should have known his injury may have been wrongfully caused no later than July 1992 (when David saw Dr. Johnson) and that plaintiffs failed to plead a 
prima
 
facie
 case of fraudulent concealment.  Plaintiffs filed a motion to reconsider, and in September 2000 the trial court denied plaintiffs' motion.  This appeal followed.

II. ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998); 
Rotzoll v. Overhead Door Corp.
, 289 Ill. App. 3d 410, 413, 681 N.E.2d 156, 158 (1997).
  In ruling on a motion for summary judgment, the trial court must view all evidence in the light most favorable to the nonmovant.  
Malone v. American Cyanamid Co.
, 271 Ill. App. 3d 843, 845, 649 N.E.2d 493, 495 (1995).
  
We review
 grants of summary judgment 
de
 
novo
.  
Malone
, 271 Ill. App. 3d at 845, 649 N.E.2d at 495.

Plaintiffs argue that a genuine issue of material fact exists about when David knew or reasonably should have known that his injury was wrongfully caused.  Specifically, plaintiffs assert that David knew the injury was wrongfully caused on October 21, 1992, when the cholangiogram showed the surgical clips had completely obstructed the right hepatic duct.  Defendant argues that David knew or should have known as a matter of law that the injury was wrongfully caused in July 1992 when David suspected that the surgery may have caused his continued symptoms.

The applicable statute of limitations is found in section 13-212(a) of the Code of Civil Procedure (735 ILCS 5/13-212(a) (West 1994)), which requires an action for medical malpractice to be brought within two years from the date when the plaintiff knew, or reasonably should have known, of both the physical problem and that it was wrongfully caused.  
Pruitt v. Schultz
, 235 Ill. App. 3d 934, 936, 601 N.E.2d 1372, 1374 (1992).  A person knows, or reasonably should know, an injury was wrongfully caused when he possesses "sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved."  
Knox College v. Celotex Corp.
, 88 Ill. 2d 407, 416, 430 N.E.2d 976, 980-81 (1981).  Whether a person possesses sufficient information is usually a question of fact.  
Knox College
, 88 Ill. 2d at 416, 430 N.E.2d at 981.
  If only one conclusion can be drawn from the undisputed facts, then the question becomes one of law.  
Wilson
, 307 Ill. App. 3d at 805, 718 N.E.2d at 704.  Close questions on this issue should not be decided as a matter of law, but are best left for juries.  
Pruitt
, 235 Ill. App. 3d at 936-37, 601 N.E.2d at 1375.
 

Plaintiffs begin by arguing that 
Wilson
, 
307 Ill. App. 3d 801, 718 N.E.2d 700,
 is distinguishable.  We agree. There, the plaintiff began experiencing respiratory problems in January 1995.  The plaintiff also knew then that several other coworkers were suffering similar symptoms.  
Wilson
, 
307 Ill. App. 3d at 803, 718 N.E.2d at 702
.  In August 1995, she questioned one of the defendants and a physician as to whether her ailments were related to the condition of the building in which she worked.  
Wilson
, 307 Ill. App. 3d at 803, 718 N.E.2d at 703.  In April 1997, the plaintiff experienced a loss of consciousness, and a pulmonary specialist diagnosed her with a pulmonary illness, which the specialist suggested could have been caused by irritants in the workplace.  
Wilson
, 307 Ill. App. 3d at 803-04, 718 N.E.2d at 703.  

In February 1998, the plaintiff filed a complaint against the defendants.  
Wilson
, 307 Ill. App. 3d at 804, 718 N.E.2d at 703.  The trial court granted the defendants' motion for summary judgment, finding the cause of action was time-barred.  
Wilson
, 307 Ill. App. 3d at 802, 718 N.E.2d at 702.
  On appeal, the plaintiff argued that until her diagnosis in April 1997 she was unaware of both her injury and its causal connection to the defendants' actions.  
Wilson
, 307 Ill. App. 3d at 805, 718 N.E.2d at 704.  This court affirmed the trial court's judgment.  
Wilson
, 
307 Ill. App. 3d at 808, 718 N.E.2d at 706.

As to the knowledge of the injury, this court held that, while the plaintiff did not know the full extent of her injuries until April 1997, the plaintiff knew she had suffered some injury in January 1995.  
Wilson
, 307 Ill. App. 3d at 806, 718 N.E.2d at 705.
  The court further found that the plaintiff had sufficient knowledge that her injury was wrongfully caused no later than August 1995.  
Wilson
, 307 Ill. App. 3d at 807, 718 N.E.2d at 705.  In support of the latter conclusion, the court cited the plaintiff's knowledge of coworkers with similar problems, the plaintiff's lengthy discussion with the one of the defendants in which she questioned whether the condition of her workplace caused her illness, and the
 plaintiff's discussion with her physician regarding the possible connection between her workplace and her illness.  
Wilson
, 307 Ill. App. 3d at 806-07, 718 N.E.2d at 705.
 

First, in deciding whether the discovery rule has been triggered, courts must look to the specific type of injury at issue.  
Bradtke v. Reotutar
, 214 Ill. App. 3d 611, 615, 574 N.E.2d 110, 113 (1991)
.  If an injury is traumatic, that is, immediate and caused by external force or violence, the plaintiff knows or should know of his right to sue when injured.  However, if an injury is an aggravation of a physical problem that may develop naturally, absent negligent causes, a plaintiff is not expected to immediately know of either its existence or potential wrongful cause.  
Saunders v. Klungboonkrong
, 150 Ill. App. 3d 56, 60, 501 N.E.2d 882, 885 (1986)
.     

In 
Wilson
, the plaintiff suffered an injury 
that was traumatic in nature.  There, the irritants in the building caused the plaintiff's injury and the injury was immediate.  
Wilson
, 
307 Ill. App. 3d at 803, 718 N.E.2d at 702.
  Further, the plaintiff failed to present any evidence that her ailments could have been the result of natural causes.

Here, the symptoms that David was experiencing could have been the result of natural causes absent a negligent cause.  Until the cholangiogram
, none of the doctors that examined David could determine the cause of his symptoms.  The doctors told David that he could have depression, hepatitis, irritable bowel syndrome, cancer, or a blockage of the hepatic duct caused by stones or tumors.  Further, the facts are disputed whether any of David's doctors told him that defendant's surgery could have caused his symptoms. 
 

David's injury is not as readily apparent as those resulting from traumatic events.  See 
Golla v. General Motors Corp.
, 167 Ill. 2d 353, 363, 657 N.E.2d 894, 899 (1995) (plaintiff immediately aware of some injury after an automobile accident); 
Hutson v. Hartke
, 292 Ill. App. 3d 411, 414, 686 N.E.2d 734, 737 (1997) (plaintiff almost blacked out when she noticed a strong odor).  The more obvious the injury, the more easily a plaintiff can determine its cause.  
Saunders
, 150 Ill. App. 3d at 60, 501 N.E.2d at 885.  David's injury was not as obvious as the one sustained in 
Wilson
, and thus its cause could not have been as easily determined.  It is difficult to fault a patient who is being treated by a skilled medical professional for not recognizing the occurrence of any injury, when the professional has not told him of the injury.  In hindsight, almost
 everything is foreseeable, but that is not the test we should employ.  It does not appear that David ignored the evidence presented to him; rather, David consistently sought medical assistance to learn the cause of the problems that he was experiencing.

Second, we do not find that only one conclusion can be drawn from the facts of this case about when David knew he had suffered a wrongfully caused injury.  
Wilson
 did not create a 
per
 
se
 rule that any suspicion by the plaintiff is, as a matter of law, reasonable knowledge under the discovery rule.  Courts apply the discovery rule on a case-by-case basis.  
Hermitage Corp. v. Contractors Adjustment Co.
,
 166 Ill. 2d 72, 78,
 651 N.E.2d 1132, 1135 (1995). 
  

Unlike 
Wilson
, the facts here are disputed about whether David had conversations with defendant or any other doctor in which he questioned
 whether defendant's surgery caused his symptoms.  Further, 
David did not develop new symptoms, nor did his symptoms worsen after the surgery.  In addition, no supporting evidence such as coworkers with the same symptoms has been asserted in this case. 

Here, 
several doctors told David that depression or another illness could have caused his symptoms.  Even when some doctors agreed that David had a blockage, the doctors gave David several possible causes or etiologies for the blockage.  In this case, different inferences could reasonably be drawn from these facts about when a reasonable person would have known David suffered a wrongfully caused injury.

In cases involving the aggravation of a problem that may arise absent negligent causes, the time when the plaintiff knew or reasonably should have known the injury was wrongfully caused generally presents a question of fact rather than law.  
Bradtke
, 214 Ill. App. 3d at 618, 574 N.E.2d at 115.  Here, 
at what point David knew or should have known of the injury and its possible cause is not certain.  David was aware of a physical problem, but when he became aware of the true nature of his ailment is disputed.  Thus, we find a genuine issue of material fact exists. 

In light of our holding, we need not address plaintiffs' arguments that (1) 
defendant's concealment of David's injury delayed discovery of the injury and should toll the statute of limitations and (2) the trial court's finding as to fraudulent concealment precluded amendment of plaintiffs' complaint within the statute of limitations
. 

 
 III. CONCLUSION

Accordingly, we reverse the trial court's judgment 
and remand for further proceedings consistent with this opinion
.

Reversed and remanded.

McCULLOUGH and MYERSCOUGH, JJ., concur.