PEKIN INSURANCE COMPANY, Plaintiff-Appellee, v. AMANDA ADAMS, Defendant (Nicholas Marshall, as Father and Next Friend of Christopher Marshall, a Minor, Defendant-Appellant).

Fourth District No. 4—01—1056

Argued August 20, 2002.—Opinion filed October 28, 2002.—Rehearing denied December 2, 2002.

Dennis G. Woodworth (argued), of Blickhan, Woodworth & Timmerwilke, of Quincy, for appellant.

Robert Marc Chemers (argued) and Amanda J. Banner, both of Pretzel & Stouffer, Chtrd., of Chicago, for appellee.

JUSTICE APPLETON delivered the opinion of the court:

Amanda Adams owned a Doberman pinscher, which bit a seven-year-old boy, Christopher Marshall. Amanda had renter's liability insurance from Pekin Insurance Co. (Pekin), and Christopher's father, Nicholas Marshall, submitted a claim. Pekin denied the claim and filed

a complaint for rescission of the insurance policy on the ground that Amanda had falsely stated, in her application for the insurance, that she had no "animals." The parties filed cross-motions for summary judgment. The trial court granted Pekin's motion and denied defendants' motions.

Nicholas appeals the summary judgment in Pekin's favor. He argues that (1) Pekin, rather than Amanda, was responsible for the misrepresentation and (2) the misrepresentation was not material. We reverse the trial court's judgment and remand this case for further proceedings.

## I. BACKGROUND

Amanda bought the policy through Bybee Insurance Agency, which was Pekin's agent. Linda Sade was an employee of the agency. Before sending Amanda the application, Linda asked her questions over the telephone. During that telephone conversation, Linda never asked her if she had any animals.

When Amanda received the application in the mail, answers to many of the questions were already typed in. Question No. 9 read as follows: "Does applicant or any tenant have animals or exotic pets?" An employee of the insurance agency had typed an "X" in the box corresponding to "no." Amanda testified, however, that she did not read question No. 9 or any other part of the application, except for the parts that were highlighted and which she had to fill in. She signed the application and mailed it back to the agent five days after receiving it. Above her signature, the following language appeared:

> "I have read the application[,] and I declare that to the best of my knowledge and belief all of the foregoing statements are true; and that these statements are offered as an inducement to the company to issue the policy for which I am applying."

When investigating Nicholas's claim, Pekin discovered that not only did Amanda have a dog when she signed the application, but the dog had bitten a girl three or four years before biting Christopher.

Becky Weems was an underwriter for Pekin. In her affidavit in support of summary judgment and her deposition she stated that ownership of a dog is a material fact because dogs increase the risk of liability. When learning that an applicant owns a dog, the agent is supposed to ask questions about the dog and enter the additional information in the section of the application labeled "Remarks." If dissatisfied with the information, the underwriter can either deny the application or ask for more information. Becky Weems testified that she "would never issue a policy with a prior dog[-]bite history."

In its order granting Pekin's motion for summary judgment and denying defendants' motions for summary judgment, the trial court

ordered that (1) the insurance policy was rescinded, (2) the insurance policy did not apply to Nicholas's claim, and (3) Pekin must refund to Amanda all of the premiums she has paid. This appeal followed.

## II. ANALYSIS

Citing *Beck v. Capitol Life Insurance Co.*, 48 Ill. App. 3d 937, 363 N.E.2d 170 (1977), among other authorities, Nicholas argues that Pekin, rather than Amanda, is responsible for the misrepresentation and Pekin should be estopped from asserting the misrepresentation as a defense.

In *Beck*, 48 Ill. App. 3d at 939, 363 N.E.2d at 171, the plaintiff brought an action to recover under a life insurance policy. The insurer contended that because the insured, Clarence Beck, had falsely stated, in a "reinstatement application," that he was " 'now in good health and free from any symptom of disease,' " the insurer did not have to pay the claim after his death. *Beck*, 48 Ill. App. 3d at 939-40, 363 N.E.2d at 171-72. Clarence was, in fact, in poor health and had heart disease and diabetes when he signed the application, and the misrepresentation was material to the insurer's risk. *Beck*, 48 Ill. App. 3d at 940, 363 N.E.2d at 172.

After a bench trial, the circuit court entered judgment for the plaintiff, thereby indicating that it accepted her version of the facts. *Beck*, 48 Ill. App. 3d at 940, 363 N.E.2d at 172. The plaintiff, Clarence's wife, testified that the agent completed the application and brought it to her home for Clarence's signature. *Beck*, 48 Ill. App. 3d at 940, 363 N.E.2d at 172. Before completing the application, the agent made no inquiries about Clarence's health. *Beck*, 48 Ill. App. 3d at 940, 363 N.E.2d at 172.

■ The insurer argued that even if, as the plaintiff testified, the agent rather than Clarence made the misrepresentation, "the policy [was] voidable because the deceased, in signing the application for reinstatement, was bound by its contents and representations as his own." *Beck*, 48 Ill. App. 3d at 940, 363 N.E.2d at 172. The Fifth District disagreed. It held:

> "[If] an agent of the insurer completes an application for insurance without propounding the questions therein to the insured, in the absence of collusion with the insured, the insurer is estopped from asserting any misrepresentations as a defense in an action for payment under the policy." *Beck*, 48 Ill. App. 3d at 940-41, 363 N.E.2d at 172.

Plaintiff argues that *Beck* is distinguishable because of the preprinted language in Amanda's application, "I have read the application[,] and I declare that to the best of my knowledge and belief all of the foregoing statements are true." *Beck* did not say that the

"reinstatement application" had any comparable language. "The fact that there is a clause in the application that the insured has verified the answers and statements as true does not prevent the knowledge of the agent from being imputed to the insurer." *Marionjoy Rehabilitation Hospital v. Lo*, 180 Ill. App. 3d 49, 53, 535 N.E.2d 1061, 1064 (1989), citing *Royal Neighbors of America v. Boman*, 177 Ill. 27, 31-32, 52 N.E. 264, 266 (1898). "When an agent fills out an application for insurance without inquiry, merely presenting the application to the insured for his signature, the answers to the questions in the application will not be warranties"—even if the parties stipulate in the insurance policy that they are warranties. *Flenner v. Capital Live Stock Insurance Co.*, 217 Ill. App. 529, 531-32 (1920), cited in *Beck*, 48 Ill. App. 3d at 941, 363 N.E.2d at 173.

There must be "no fraud or intent to deceive on the part of the applicant." *Royal Neighbors*, 177 Ill. at 32, 52 N.E. at 266. "[If] the applicant has acted in bad faith, either on his own or in collusion with the insurer's agent, knowledge of the agent will not be imputed to the insurer." *Marionjoy*, 180 Ill. App. 3d at 53, 535 N.E.2d at 1064. In *Marionjoy*, 180 Ill. App. 3d at 51, 535 N.E.2d at 1063, an insurance agent completed and signed an application for health insurance for Ceasar Lo's son. The agent answered "no" to all questions in the application, even though Lo's son had undergone brain surgery. *Marionjoy*, 180 Ill. App. 3d at 51, 535 N.E.2d at 1063. When Lo pointed out the omission to the agent, the agent told him "not to worry" because the insurer "was a very high[-]risk company." *Marionjoy*, 180 Ill. App. 3d at 51, 535 N.E.2d at 1063. At or near the time the insurer issued the insurance policy, it sent Lo a copy of the application, asking him to verify, on an enclosed form, that all of the information in the application was correct. *Marionjoy*, 180 Ill. App. 3d at 51, 535 N.E.2d at 1063. Lo indicated on the form that the information was correct, signed it, and mailed it back to the insurer. *Marionjoy*, 180 Ill. App. 3d at 51, 535 N.E.2d at 1063. Later, when Lo submitted a claim for medical treatment of his son, the insurer denied the claim and rescinded the policy because of the misrepresentation in the application. *Marionjoy*, 180 Ill. App. 3d at 51, 535 N.E.2d at 1063.

The trial court entered summary judgment in the insurer's favor, and the Second District affirmed. *Marionjoy*, 180 Ill. App. 3d at 52, 55, 535 N.E.2d at 1063, 1065. The appellate court held that Lo's representation to the insurer that all the information in the application was correct was "an affirmative action on the part of Lo independent of the agent[,] which shows bad faith." *Marionjoy*, 180 Ill. App. 3d at 53, 535 N.E.2d at 1064. If the agent had filled out the application "while knowing the true medical history of the Los' son"

and nothing further had happened, the insurer could not have relied on the misrepresentation as a defense. *Marionjoy*, 180 Ill. App. 3d at 53, 535 N.E.2d at 1064. Because of two additional circumstances, however, the appellate court refused to impute the agent's knowledge to the insurer: (1) the correspondence between the insurer and Lo was independent of the agent, and (2) Lo knew that his son's medical history was important because the insurer had denied coverage on that basis once before. *Marionjoy*, 180 Ill. App. 3d at 53, 535 N.E.2d at 1064.

In the present case, the trial court concluded that *Beck* was distinguishable because, in *Beck*, "there was really no opportunity to review the accuracy or the content of the application," whereas, in the present case, Amanda had the application "in her hands for perhaps five days at home[,] where she could peruse the contents at her leisure." Plaintiff echoes that argument. In *Beck*, the Fifth District never said that Clarence lacked an opportunity to review the "reinstatement application." The factor of time nowhere appears in the appellate court's rationale in that case. "The insurer cannot rely on these incorrectly recorded answers *even when the insured knows that the agent has entered answers different from the ones he gave* where the incorrect answers are entered pursuant to the agent's advice, suggestion, or interpretation." (Emphasis added.) *Logan v. Allstate Life Insurance Co.*, 19 Ill. App. 3d 656, 660, 312 N.E. 2d 416, 420-21 (1974). If, on his or her own initiative, the agent puts incorrect information in the application, the applicant may assume that the agent "knew just what information his principal desired and how it should be expressed." *Royal Neighbors*, 177 Ill. at 32, 52 N.E. at 266.

We look at the evidence in a light most favorable to party opposing the summary judgment, Nicholas. See *Fitt v. City of Mattoon*, 215 Ill. App. 3d 472, 479, 574 N.E.2d 1275, 1279 (1991). Amanda never verified the accuracy of the application directly to Pekin, and Pekin never asked her to do so. The agent highlighted only the uncompleted parts of the application. Amanda could reasonably have assumed that only the highlighted parts of the application needed her attention, and she could have ignored the rest of the application in the belief that Pekin's agent had done a competent job filling in the answers. Pekin "ought not [to] be allowed to take advantage of its own mistake" in preparing the application. *Storment v. Hartford Fire Insurance Co.*, 215 Ill. App. 287, 293 (1919) (cited in *Beck*, 48 Ill. App. 3d at 941, 363 N.E.2d at 173).

Even if, during the five days she had the application, Amanda noticed the inaccuracy therein, Pekin still would be estopped from relying on it. Because Pekin's agent, on its own initiative, answered

"no" to the question of whether Amanda had any "animals," she had a right to follow that suggestion. She could assume that her dog was not the type of "animal" that concerned Pekin. The present case comes within the rule of *Beck* rather than *Marionjoy.* The trial court erred in granting Pekin's motion for summary judgment.

Because we agree with Nicholas's first contention (that Pekin is estopped from relying on the misrepresentation), it is unnecessary for us to address his second contention (that the misrepresentation was not material).

### III. CONCLUSION

For the foregoing reasons, we reverse the trial court's award of summary judgment to plaintiff and remand this case for further proceedings not inconsistent with this opinion.

Reversed and remanded.

STEIGMANN and MYERSCOUGH, JJ., concur.