PEKIN INSURANCE COMPANY, Plaintiff-Appellee, v. AMANDA M. ADAMS, Defendant (Nicholas Marshall, as Father and Next Friend of Christopher Marshall, a Minor, Defendant-Appellant).

Fourth District   No. 4—01—1056

Opinion filed August 26, 2003.

Dennis G. Woodworth, of Blickhan, Woodworth & Timmerwilke, of Quincy, for appellant.

Robert Marc Chemers and Amanda J. Banner, both of Pretzel & Stouffer, Chtrd., of Chicago, for appellee.

JUSTICE APPLETON delivered the opinion of the court:

Amanda M. Adams owned a Doberman pinscher, which bit a seven-year-old boy, Christopher Marshall. Amanda had renter's liability insurance from Pekin Insurance Company (Pekin), and Christopher's father, Nicholas Marshall, submitted a claim. Pekin denied the claim and filed a complaint against Amanda and Nicholas, seeking rescission of Amanda's insurance policy on the ground that she had falsely stated, in her application for the insurance, that she had no "animals." The parties filed cross-motions for summary judgment. The trial court granted Pekin's motion and denied defendants' motions.

Nicholas appealed the summary judgment in Pekin's favor. He argued that (1) Pekin, rather than Amanda, was responsible for the misrepresentation and (2) the misrepresentation was not material. On October 28, 2002, we filed an opinion reversing the trial court's judgment and remanding the case for further proceedings. *Pekin Insurance Co. v. Adams*, 334 Ill. App. 3d 1083, 778 N.E.2d 1240 (2002) (original opinion). On December 2, 2002, we denied Pekin's petition for rehearing, and on April 2, 2003, the supreme court denied Pekin's petition for leave to appeal. *Pekin Insurance Co. v. Adams*, 203 Ill. 2d 550, 788 N.E.2d 730 (2003). On May 14, 2003, however, in the exercise of its supervisory authority, the supreme court directed us to vacate our judgment and reconsider our decision in the light of *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 786 N.E.2d 1010 (2003). *Pekin Insurance Co. v. Adams*, No. 95501 (May 14, 2003) (nonprecedential supervisory order directing Fourth District to vacate its original opinion and reconsider in light of *Golden Rule*). Accordingly, we vacated our original opinion. After reconsidering the facts of this case in the light of *Golden Rule*, we still find genuine issues of material fact precluding summary judgment in Pekin's favor. Therefore, we again reverse the trial court's judgment and remand this case for further proceedings.

## I. BACKGROUND

Amanda testified in her deposition that she had bought the insur-

ance policy through Bybee Insurance Agency, which was Pekin's agent. Linda Sade was an employee of the agency, and in the course of purchasing the policy, Amanda spoke with her several times on the telephone. Linda asked Amanda questions about her eligibility for insurance but never asked her if she had any animals. Afterward, the agency mailed Amanda an application for the insurance policy.

When Amanda received the application in the mail, answers to many of the questions were already typed in. Question No. 9 read as follows: "Does applicant or any tenant have animals or exotic pets?" An "X" was typed in the box corresponding to "no." Amanda testified, however, that she did not read question No. 9 or any other part of the application except for the parts she had to fill in, which the agency had highlighted. Having already been answered in the negative, question No. 9 was not highlighted. Amanda signed the application and mailed it back to the agent some five days after receiving it, without reading the following language above her signature:

> "I have read the application[,] and I declare that to the best of my knowledge and belief all of the foregoing statements are true; and that these statements are offered as an inducement to the company to issue the policy for which I am applying."

When investigating Nicholas's claim, Pekin discovered that not only did Amanda have a dog on her premises when she signed the application (a nine-year-old dog, which she had owned since it was a puppy), but the dog had bitten a girl three or four years before biting Christopher.

Becky Weems was an underwriter for Pekin. In her affidavit in support of Pekin's motion for summary judgment and in her deposition, she stated that ownership of a dog was a material fact, because dogs increased the risk of liability. When learning that an applicant owned a dog, the agent was supposed to ask questions about the dog and enter the additional information in the section of the application labeled "Remarks." If dissatisfied with the information, the underwriter could either deny the application or ask for more information. Weems testified she "would [have] never issue[d] a policy with a prior dog[-]bite history." Pekin also presented a copy of its underwriting guidelines stating that "any dog with a bite history [is] not acceptable."

In its order granting Pekin's motion for summary judgment and denying defendants' motions for summary judgment, the trial court concluded that (1) the insurance policy was rescinded, (2) the insurance policy did not apply to Nicholas's claim, and (3) Pekin must refund to Amanda all of the premiums she has paid. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

■ We review summary judgments *de novo. Warren v. Burris*, 325 Ill. App. 3d 599, 603, 758 N.E.2d 889, 892 (2001). Viewing the pleadings, depositions, admissions, and affidavits in a light most favorable to the nonmoving party, we ask whether they reveal any "genuine issue as to any material fact." 735 ILCS 5/2—1005(c) (West 2002); *Warren*, 325 Ill. App. 3d at 602, 758 N.E.2d at 892. "Genuine" means there is evidence to support the position of the nonmoving party. *N.W. v. Amalgamated Trust & Savings Bank*, 196 Ill. App. 3d 1066, 1075, 554 N.E.2d 629, 636 (1990). We also ask whether "the moving party is entitled to a judgment as a matter of law"—in other words, whether the trial court correctly interpreted and applied the law. 735 ILCS 5/2—1005(c) (West 2002); *Farmers Automobile Insurance Ass'n v. Country Mutual Insurance Co.*, 309 Ill. App. 3d 694, 698, 722 N.E.2d 1228, 1231 (2000).

### B. Amanda's Actual "Knowledge and Belief"

In *Golden Rule*, 203 Ill. 2d at 459, 786 N.E.2d at 1012, the defendant's father applied to Golden Rule Insurance Company (Golden Rule) for medical insurance for the defendant. One of the questions in the application was whether the proposed insured was covered by other insurance. *Golden Rule*, 203 Ill. 2d at 459, 786 N.E.2d at 1012. The question was answered in the negative. *Golden Rule*, 203 Ill. 2d at 459, 786 N.E.2d at 1012. The application warned that a misrepresentation about other insurance could cause Golden Rule to rescind the policy. *Golden Rule*, 203 Ill. 2d at 459-60, 786 N.E.2d at 1013. The application also stated, just above the signature line: " 'I represent that the statements and answers in this application are true and complete *to the best of my knowledge and belief*.' " (Emphasis added.) *Golden Rule*, 203 Ill. 2d at 460, 786 N.E.2d at 1013.

After Golden Rule issued a policy in the defendant's name, the defendant was injured in an accident. *Golden Rule*, 203 Ill. 2d at 460, 786 N.E.2d at 1013. The defendant's father reviewed his insurance policies and realized that the defendant was covered as an "eligible dependent" under a policy other than the one Golden Rule had issued. *Golden Rule*, 203 Ill. 2d at 460, 786 N.E.2d at 1013. Golden Rule made the same discovery in its investigation of the defendant's claim and, as a result, rescinded the policy. *Golden Rule*, 203 Ill. 2d at 460, 786 N.E.2d at 1013.

The supreme court held that the language in the application, "to the best of my knowledge and belief," "establishe[d] a lesser standard of accuracy" than that which section 154 of the Illinois Insurance

Code (215 ILCS 5/154 (West 1998)) established. *Golden Rule*, 203 Ill. 2d at 466, 786 N.E.2d at 1016. Under section 154, "a misrepresentation, even if innocently made," could have been grounds for voiding a policy, if the misrepresentation had materially affected the insurer's risk. *Golden Rule*, 203 Ill. 2d at 464, 786 N.E.2d at 1015. The "knowledge and belief" language changed the inquiry, however, "from an inquiry into whether the facts asserted were true to whether, on the basis of what he knew, the applicant believed them to be true. Thus, the response [in the application had to] be assessed in the light of the applicant's actual knowledge and belief." *Golden Rule*, 203 Ill. 2d at 466, 786 N.E.2d at 1016-17. On the facts of the case, the supreme court held "that this assessment involve[d] a credibility determination that [could] only be made by the jury." *Golden Rule*, 203 Ill. 2d at 467, 786 N.E.2d at 1017.

The supreme court further held that even if the defendant's father had known and believed that the defendant was covered by other insurance, the jury would have to determine whether "the misstatement was material to the insurer's acceptance of the risk." *Golden Rule*, 203 Ill. 2d at 467, 786 N.E.2d at 1017. "[T]he issue of materiality" was "generally a question of fact for a jury to decide." *Golden Rule*, 203 Ill. 2d at 467, 786 N.E.2d at 1017.

■ In light of *Golden Rule*, the inquiry is not simply whether the answer to question No. 9 of Amanda's application for insurance was false but whether she actually knew and believed it was false, *i.e.*, whether she knew and believed she "had" an "animal." See *Golden Rule*, 203 Ill. 2d at 466, 786 N.E.2d at 1016-17. Because no one has direct access to another person's mind, one can only infer, from circumstantial evidence, that another person has knowledge of a fact. *Brock v. Police Board of the City of Chicago*, 205 Ill. App. 3d 1035, 1042, 563 N.E.2d 970, 975 (1990). That Amanda had a dog on her premises for nine years, up through the date she signed the application, is, of course, circumstantial evidence that she knew and believed she had the dog. The record does not appear to contain any countervailing evidence that she was unaware of having the dog. Therefore, we find no genuine issue as to whether Amanda actually knew and believed she had a dog (a type of "animal") when she signed the application.

## C. Estoppel

■ A genuine issue of material fact precludes summary judgment for the plaintiff if the defendant has sworn to facts that "constitute a legal defense." *St. Charles National Bank v. Ford*, 39 Ill. App. 3d 291, 296, 349 N.E.2d 430, 434 (1976). Nicholas argues that by his sworn

facts, he has raised two defenses: (1) estoppel and (2) a lack of materiality. *Golden Rule* does not address the issue of estoppel and is, therefore, in that respect, distinguishable.

Citing *Beck v. Capitol Life Insurance Co.*, 48 Ill. App. 3d 937, 363 N.E.2d 170 (1977), among other authorities, Nicholas argues that Pekin, rather than Amanda, is responsible for the misrepresentation, and Pekin should be estopped from asserting the misrepresentation as a defense.

In *Beck*, 48 Ill. App. 3d at 939, 363 N.E.2d at 171, the plaintiff brought an action to recover under a life insurance policy. The insurer contended that because the insured, Clarence Beck, had falsely stated, in a "reinstatement application," that he was " 'now in good health and free from any symptom of disease,' " the insurer did not have to pay the claim after his death. *Beck*, 48 Ill. App. 3d at 939-40, 363 N.E.2d at 171-72. Clarence was, in fact, in poor health and had heart disease and diabetes when he signed the application, and the misrepresentation was material to the insurer's risk. *Beck*, 48 Ill. App. 3d at 939-40, 363 N.E.2d at 172.

After a bench trial, the trial court entered judgment for the plaintiff, thereby indicating that it accepted her version of the facts. *Beck*, 48 Ill. App. 3d at 940, 363 N.E.2d at 172. The plaintiff, Clarence's wife, testified that the agent completed the application and brought it to her home for Clarence's signature. *Beck*, 48 Ill. App. 3d at 940, 363 N.E.2d at 172. Before completing the application, the agent made no inquiries about Clarence's health. *Beck*, 48 Ill. App. 3d at 940, 363 N.E.2d at 172.

The insurer argued that even if, as the plaintiff testified, the agent, rather than Clarence, had made the misrepresentation, "the policy [was] voidable because the deceased, in signing the application for reinstatement, was bound by its contents and representations as his own." *Beck*, 48 Ill. App. 3d at 940, 363 N.E.2d at 172. The Fifth District disagreed. It held:

> "[If] an agent of the insurer completes an application for insurance without propounding the questions therein to the insured, in the absence of collusion with the insured, the insurer is estopped from asserting any misrepresentations as a defense in an action for payment under the policy." *Beck*, 48 Ill. App. 3d at 940-41, 363 N.E.2d at 172.

Pekin argues that *Beck* is distinguishable for two reasons: (1) "the applicant [in *Beck*] did not have the opportunity to verify whether the information contained in the application was correct," whereas Amanda kept the application for approximately five days before mailing it back to Pekin; and (2) unlike the application in the present case,

the one in *Beck* did not contain a certification by the applicant that he had actually read the application and verified the truth of its contents.

We find no indication, in the appellate court's recitation of the facts in *Beck*, that the applicant, Clarence Beck, lacked an opportunity to read the application before signing it. The agent brought the completed application to Beck's home for his signature. *Beck*, 48 Ill. App. 3d at 940, 363 N.E.2d at 172. The opinion does not say that the agent hindered Beck in any way from reading the application or denied him additional time to read it.

From an early date, Illinois courts have held that if an insurance agent fills out an application for an applicant, and without any collusion between the agent and applicant inserts a false answer into the application, a provision that the applicant has read the application and verified the answers before signing it will not save the insurer from being estopped from asserting the false answer as a defense. *Royal Neighbors of America v. Boman*, 177 Ill. 27, 32, 52 N.E. 264, 266 (1898), cited in *Beck*, 48 Ill. App. 3d at 941, 363 N.E.2d at 173; *Niemann v. Security Benefit Ass'n*, 350 Ill. 308, 315-16, 183 N.E. 223, 226-27 (1932). There must be "no fraud or intent to deceive on the part of the applicant." *Royal Neighbors*, 177 Ill. at 32, 52 N.E. at 266. "[If] the applicant has acted in bad faith, either on his own or in collusion with the insurer's agent, knowledge of the agent will not be imputed to the insurer." *Marionjoy Rehabilitation Hospital v. Lo*, 180 Ill. App. 3d 49, 53, 535 N.E.2d 1061, 1064 (1989).

In *Marionjoy*, 180 Ill. App. 3d at 51, 535 N.E.2d at 1063, an insurance agent completed and signed an application for health insurance for Ceasar Lo's son. The agent answered "no" to all questions in the application, even though Lo's son had undergone brain surgery. *Marionjoy*, 180 Ill. App. 3d at 51, 535 N.E.2d at 1063. When Lo pointed out the omission to the agent, the agent told him "not to worry" because the insurer "was a very high[-]risk insurance company." *Marionjoy*, 180 Ill. App. 3d at 51, 535 N.E.2d at 1063. At or near the time the insurer issued the insurance policy, it sent Lo a copy of the application, asking him to verify, on an enclosed form, that all of the information in the application was correct. *Marionjoy*, 180 Ill. App. 3d at 51, 535 N.E.2d at 1063. Lo indicated on the form that the information was correct, signed it, and mailed it back to the insurer. *Marionjoy*, 180 Ill. App. 3d at 51, 535 N.E.2d at 1063. Later, when Lo submitted a claim for medical treatment of his son, the insurer denied the claim and rescinded the policy because of the misrepresentation in the application. *Marionjoy*, 180 Ill. App. 3d at 51, 535 N.E.2d at 1063.

The trial court entered summary judgment in the insurer's favor,

and the Second District affirmed. *Marionjoy*, 180 Ill. App. 3d at 52, 55, 535 N.E.2d at 1063, 1065. The appellate court held that Lo's representation to the insurer that all the information in the application was correct was "an affirmative action on the part of Lo independent of the agent[,] which shows bad faith." *Marionjoy*, 180 Ill. App. 3d at 53, 535 N.E.2d at 1064. If the agent had filled out the application "while knowing the true medical history of the Los' son" and nothing further had happened, the insurer could not have relied on the misrepresentation as a defense. *Marionjoy*, 180 Ill. App. 3d at 53, 535 N.E.2d at 1064. Because of two additional circumstances, however, the appellate court refused to impute the agent's knowledge to the insurer: (1) the correspondence between the insurer and Lo was independent of the agent, and (2) Lo knew that his son's medical history was important because the insurer had denied coverage on that basis once before. *Marionjoy*, 180 Ill. App. 3d at 53, 535 N.E.2d at 1064. In the present case, Amanda never verified the accuracy of the application directly to Pekin, and Pekin never asked her to do so. *Marionjoy* is, therefore, distinguishable.

In *Johnson v. Royal Neighbors of America*, 253 Ill. 570, 574, 97 N.E. 1084, 1085 (1912), the insurance agent "wrote [the] answers," on the application, "contrary to the true answers made by" the insured— or, according to some witnesses, without even asking the insured what the correct answers were. The supreme court held that the insurer had "waived its right to object to the validity of the benefit certificate on the ground that [the insured's] answers were warranties." *Johnson*, 253 Ill. at 574, 97 N.E. at 1086. In language relevant to the present case, the supreme court said:

"This rule is not affected by the fact that a copy of the application was attached to the benefit certificate, and there was printed in the certificate a request to the holder to read the application and if any of the answers were incorrect[,] to notify [the insurer's] recorder." *Johnson*, 253 Ill. at 574-75, 97 N.E. at 1086.

Pekin has presented no evidence that Amanda acted in collusion with the agent. A reasonable trier of fact need not find that she acted in bad faith. If, as the supreme court held in *Johnson*, a request to verify the accuracy of the answers does not "affect" the "rule" of waiver, such a request, standing alone, cannot prove bad faith or fraud by the insured. The agent highlighted only the uncompleted parts of the application. Amanda could have reasonably assumed that only the highlighted parts of the application needed her attention, and she could have ignored the rest of the application in the belief that Pekin's agent had done a competent job filling in the answers.

Pekin compares question No. 9 of the application to a "leading

question," arguing that Amanda should have answered it truthfully. The analogy is flawed. A leading question is, despite its leading nature, a question awaiting an answer. Pekin provided the answer. As the supreme court said in *Andes Insurance Co. v. Fish*, 71 Ill. 620, 623 (1874):

> "It was competent to show by parol that the application was filled out by the agent of [the insurance company], with full knowledge of all the facts, for, although afterwards signed by the assured, it was then the act of the company as well as of the assured, and its representations became as conclusive upon it as they did upon her. All charge of fraud and deception on the part of the assured might thus be completely and properly refuted."

■ We see no reason why the outcome should be different if the insurance agent wrote the answers in the application without asking the applicant what the correct answer was. "When an agent fills out an application for insurance without inquiry, merely presenting the application to the insured for his signature, the answers to the questions in the application will not be warranties." *Flenner v. Capital Live Stock Insurance Co.*, 217 Ill. App. 529, 531-32 (1920), cited in *Beck*, 48 Ill. App. 3d at 941, 363 N.E.2d at 173. Regardless of whether the agent disregards information from the applicant or does not seek information from the applicant, the agent (on behalf of the principal, the insurer) manifests an indifference to the information.

## D. Materiality

As the supreme court stated in *Golden Rule*, 203 Ill. 2d at 467, 786 N.E.2d at 1017, "the issue of materiality is generally a question of fact for a jury to decide." Summary judgment is a drastic way to dispose of a case, and a trial court should grant summary judgment only if the movant's right to the judgment is clear and free from doubt. *Golden Rule*, 203 Ill. 2d at 467, 786 N.E.2d at 1017. Pekin came forward with evidence that ownership of a dog—especially a dog that had bitten someone in the past—was material to Pekin's acceptance of the risk. A reasonable trier of fact would not have to believe Pekin. If Pekin's agent filled in the answer to question No. 9 without bothering to ask Amanda whether she owned a dog, Pekin arguably did not consider the ownership of a dog to be important.

## III. CONCLUSION

We find genuine issues of material fact relating to estoppel and materiality. For the foregoing reasons, we reverse the trial court's

award of summary judgment to Pekin and remand this case for further proceedings not inconsistent with this opinion.

Reversed.

STEIGMANN, J., *concurs.*

PRESIDING JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I respectfully concur in part and dissent in part. I would reverse, but on all grounds. *Golden Rule* does not mandate summary judgment as to Amanda's actual knowledge and belief. *Golden Rule* merely mandates reconsideration in light of a lesser standard of accuracy. Material issues remain as to Amanda's belief in the truth of the response concerning an animal. This assessment involves a credibility determination to be made by the jury. *Golden Rule*, 203 Ill. 2d at 467, 786 N.E.2d at 1017. We do not know whether Amanda read the question and response or whether she thought "an animal" included a dog. I would reverse on this issue.